UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

JACQUELINE JONES, INDEPENDENT
ADMINISTRATOR of the ESTATE
of TOYA D. FRAZIER, DECEDENT,

    Plaintiff,

v.                                                                               Case No. 16-2364

SERGEANT ARNOLD MATHEWS, et al.,

    Defendants.

**ORDER**

    This matter is before the Court on Defendants' Clayton Goodwin, Jessica Burgener, Howard Wilson, and Dan Walsh's Motion to Dismiss Plaintiff's Third Amended Complaint (#83). Jacqueline Jones, Independent Administrator of the Estate of Toya D. Frazier ("Plaintiff") filed a Response (#96) in Opposition to the Motion. For the reasons discussed below, the Motion to Dismiss Clayton Goodwin, Jessica Burgener, Howard Wilson, and Dan Walsh from Plaintiff's Third Amended Complaint (#83) is GRANTED.

    **I.**    **Background**

    The following facts are taken mostly from Plaintiff's Third Amended Complaint (#59) and are assumed to be true for the purposes of this Motion. *See Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989). However, the claims and defendants have shifted throughout this matter, and those changes will be noted as needed.

    From the beginning of this case, Plaintiff has consistently alleged certain facts. On November 30, 2015, at 8:45 a.m., the Decedent, Toya Frazier ("Frazier"), reported to the Champaign County Jail to serve a jail sentence. Frazier informed correctional officers that she suffered from hypertension, morbid obesity, insomnia, gastroesophageal reflux disease, joint pain of lower extremities, and history of drug abuse. The jail officials placed her on "the

Medical Watch List" "with a mandate requiring a correctional officer to check on her every 13 minutes."[1]

Around 2:00 a.m. on December 1, 2017, Frazier cried out due to abdominal pain. Frazier was allegedly banging on her cell door seeking help until about 2:30 or 3:00 a.m. At approximately that time, Defendant Sergeant Arnold Mathews, a jail supervisor at the Champaign County Jail, ordered Frazier to be quiet as she was waking the other inmates. When Frazier refused to quiet down, Mathews moved her to another cell around 2:50 a.m.

Plaintiff's Complaint contains no relevant facts about what happened between 2:50 a.m. and 6:30 a.m. Around 6:30 a.m., however, Plaintiff alleges that an unnamed correctional officer asked Frazier what was wrong, at which point she replied "heroin." Around the same time, Mathews sent an e-mail to the medical staff at the jail stating "[i]nmate Frazier's stomach hurts due to heroin withdrawal. Can you see her at your early (sic) convenience?"

At approximately 7:30 a.m. another unnamed correctional officer notified Defendant Cecile Kemp, a licensed practical nurse, that Frazier needed medical treatment. Plaintiff alleges that Kemp waited until about 11:30 a.m. to complete a screening, after which she determined that Frazier needed treatment for heroin withdrawal. At approximately 11:30 a.m., Kemp notified a doctor that Frazier needed to begin the treatment. At approximately 2:30 p.m., Novak attended to Frazier and advised her that her next treatment would be "between 4:00 p.m. and 4:30 p.m."

Plaintiff alleges that, at approximately 3:23 p.m., Frazier removed "items" from her toiletry bag and appeared to place "3 to 4 items in her mouth." At approximately 3:50 p.m., Frazier "appeared to have a small seizure" and never "move[d]" again.

Plaintiff further alleges that Defendant Clayton Goodwin ("Goodwin") delivered a meal to Plaintiff around 4:43 p.m. Another "correctional officer" discovered that Frazier had not eaten her meal about 5:00 p.m. Officers called emergency medical assistance by 5:11 p.m. Frazier was pronounced dead at 5:46 p.m. from "diphenhydramine toxicity and misuse."

---

[1] Defendants allege that the actual policy calls for correctional staff to check on inmates every 15 minutes.

Plaintiff added facts to her Third Amended Complaint that had not been previously included in any other complaints. Plaintiff now alleges Frazier was booked at the Champaign Country Satellite Jail at approximately 9:50 a.m., at which point Officer Howard Wilson ("Wilson") photographed Frazier, fingerprinted her, and escorted her to a cell. The Complaint alleges that Wilson did not inspect Frazier's "retractable cane" and failed to ascertain whether Frazier had been previously searched at the jail or courthouse. Plaintiff's Third Amended Complaint is the first mention of Wilson.

The Third Amended Complaint also adds that officers searched Frazier for the first time at approximately 6:45 p.m. This search was performed by correctional officer Jessica Burgener ("Burgener"). In performing this search, Plaintiff alleges that Burgener negligently and "willfully and wantonly failed to properly search Ms. Frazier in a timely manner upon her arrival at Champaign County Jail." Plaintiff's Third Amended Complaint is the first mention of Burgener.[2]

Plaintiff also renames Goodwin as a defendant. Goodwin was named as a defendant in Plaintiff's Original Complaint (#1) and her First Amended Complaint (#19). Plaintiff, in her original complaint, sued Goodwin for Wrongful Death and Negligence, alleging that Goodwin, along with others, failed to provide Frazier adequate medical care, failed to comply with "medical watch procedures," and negligently allowed Frazier to smuggle contraband into the jail. In her First Amended Complaint, Plaintiff sued Goodwin only for Wrongful Death, reiterating the claims that Goodwin, along with others, failed to provide Frazier adequate medical care and failed to comply with "medical watch procedures." Plaintiff, in this amended complaint, removed Goodwin from the claims relating to searching inmates for contraband upon entry into the jail.

By the Second Amended Complaint (#36), filed December 21, 2017, Plaintiff completely removed Goodwin as a defendant and made no mention of the supposedly inadequate search prior to admitting Frazier.

---

[2] Plaintiff also includes Burgener to replace earlier references to a generic "correctional officer." Specifically, Plaintiff alleges that at approximately 5:00 p.m., Burgener (rather than "a correctional officer") noticed that Frazier had not touched her meal and noted that Frazier was unresponsive.

Plaintiff renames Goodwin as a defendant in her Third Amended Complaint (#59), which she filed May 31, 2018. Now, according to Plaintiff, Goodwin arrived at the jail at 3:45 p.m. and completed a head count at 4:00 p.m. Goodwin allegedly stated, during a later interview, that he was unaware of Frazier's medical condition or any specific protocols for her. Around 4:43 p.m., Goodwin brought food to Frazier's cell "without even glancing at" Frazier. Goodwin allegedly considered this interaction as "one of the medical checks" he was required to perform. These facts represent the basis of a new Wrongful Death claim against Goodwin for inadequate medical checks.

As is obvious, Plaintiff has filed multiple Complaints that add, remove, and re-add Defendants and claims. On February 17, 2017, Plaintiff filed her First Amended Complaint (#19), containing 12 counts against various defendants, including Walsh and Goodwin. The First Amended Complaint does not mention Wilson or Burgener. On December 7, 2017, the Court entered an Order (#35) granting in part and denying in part the Motions to Dismiss. The Court's Order dismissed all claims against Defendants Walsh and Goodwin, but granted Plaintiff leave to file a Second Amended Complaint, which she did on December 21, 2017, (#36). The Second Amended Complaint did not name Walsh or Goodwin as Defendants, nor did it contain any claims against Wilson or Burgener. On January 4, 2018, the County Defendants again filed a Motion to Dismiss (#38). On April 19, 2018, the Court entered an Order (#48) granting in part and denying in part the Motion to Dismiss. Plaintiff filed her Third Amended Complaint (#59) on May 31, 2018, which brings Goodwin back in as a Defendant and adds the two previously unnamed defendants, Wilson and Burgener.

## II.     Legal Standard for Motion to Dismiss

Defendants seek dismissal of Plaintiff's Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to properly serve them and that Plaintiff's claims are time barred. A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint, not to decide the merits of the case. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "Although a statute of limitations defense is not usually part of a Rule 12(b)(6) motion to dismiss, when the allegations of the complaint reveal that relief is barred by the applicable

statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011) (citations omitted). Put another way, a plaintiff may plead herself out of court if she alleges facts that conclusively demonstrate that her claim is time-barred. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 & n.14 (7th Cir. 1998).

In considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the pleadings. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). The Court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *AnchorBank*, 649 F.3d at 614.

### III.     Analysis

Defendants argue that Walsh, Wilson, Burgener, and Goodwin should be dismissed for two reasons. First, Defendants argue that none of these Defendants have been properly served under Rule 4. Second, Defendants argue that even if the service was proper, Plaintiff's claims against all four Defendants are barred by the statute of limitations. Because the Court concludes that Plaintiff's claims are barred by the statute of limitations, discussion of the service issue is unnecessary.

#### A.     Walsh

Plaintiff, in her Response (#96), concedes that "[t]he inclusion of Walsh under the 'parties' portion of the allegations [in the Third Amended Complaint] is an error." Plaintiff's Response to Defendants' Motion to Dismiss, d/e #96, p. 2, ¶ 14. This assertion appears to be consistent with the allegations in the Third Amended Complaint, as there are no claims directed at Walsh. Accordingly, Defendant's Motion is granted as it relates to Walsh. Paragraph six (6) of Plaintiff's Third Amended Complaint (#96), naming Walsh as a party, is hereby stricken.

#### B.     Wilson, Burgener, and Goodwin

Defendants argue that Plaintiff's claims against Defendants Wilson, Burgener, and Goodwin in the Third Amended Complaint are barred by the statute of limitations. A two-year statute of limitations applies to Plaintiff's federal claims under Section 1983, while a one-year

statute of limitations applies to Plaintiff's state law claims.³ All parties agree that the incident giving rise to this litigation occurred on December 1, 2015. Therefore, the statute of limitations expired on December 1, 2017, for Plaintiff's federal claims and December 1, 2016, for her state law claims.

Plaintiff, in her Response (#96), does not challenge that the claims against Wilson, Burgener, and Goodwin are brought outside the limitations period. Instead, Plaintiff argues that her claims against the three Defendants relate back to the date of the original pleading under Federal Rule of Civil Procedure 15(c).⁴ *See* FED. R. CIV. P. 15(c)(1).

Because Plaintiff amended her complaint to add new party Defendants, the current controversy falls within Rule 15(c)(1)(C). Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading only when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

    (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

---

³ "Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law." *Jenkins v. Village of Maywood*, 506 F.3d 622, 624 (7th Cir. 2007) (*citing Hardin v. Straub*, 490 U.S. 536, 538 (1989). Section 1983 actions (like this one) "are governed by the appropriate state statute of limitations and its corresponding tolling rules." *Id.* at 623. "In Illinois, the statute of limitations for personal injury actions is two years, and so section 1983 actions litigated in federal courts in Illinois are subject to that two-year period of limitations." *Id.* Moreover, "[n]o civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101. Therefore, the applicable limitations period for Plaintiff's state law claims is one year.

⁴ Defendants also argue that there is no basis for tolling the statute of limitations under applicable Illinois tolling laws. The Court need not address this argument as Plaintiff has made no attempt to avail herself of Illinois' tolling provisions.

FED. R. CIV. P. 15(c)(1).

Thus, to satisfy Rule 15(c)(1)(C), Plaintiff must meet three requirements. First, the claims against Wilson, Bergener, and Goodwin must satisfy Rule 15(c)(1)(B), "meaning [they] must have arisen 'out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.'" *Haroon v. Talbott*, 2017 U.S. Dist. LEXIS 158522, at *5-*6 (N.D. Ill. 2017) (*citing* FED. R. CIV. P. 15(c)(1)(C)). Second, "within the period provided by Rule 4(m) for serving the summons and complaint" (ordinarily 90 days from when the complaint is filed), the new Defendants must have "received such notice of the action that [they] will not be prejudiced in defending on the merits." *Id.* (*citing* FED. R. CIV. P. 15(c)(1)(C)(i)). And, third, Plaintiff must show that, within the Rule 4(m) period, the Defendants "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." *Id.* (*citing* FED. R. CIV. P. 15(c)(1)(C)(ii)).

The Defendants do not explicitly challenge that the Third Amended Complaint arises out of the occurrence set out in the original complaint.[5] The original claim relates to Frazier's death, challenging the conduct of the jail, its employees, and others charged with Frazier's care. Although the Third Amended Complaint expands the scope of the legal theories, there seems little question that it arises from the same general occurrence. Without looking further, the Court will assume this requirement is met.

Defendants' focus their argument on Plaintiff's lack of mistake as it relates to their identities. The framework for analyzing Rule 15(c)(1)(C)'s mistake provision is guided by the Supreme Court's Ruling in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). The Court in *Krupski* emphasized that Rule 15(c)(1)(C)(ii) "asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Krupski*, 560 U.S. at 548. The Court stated that "the question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the

---

[5] Defendants argue that "Although Plaintiff has fallen short on all of these criteria, a discussion of one, the 'mistake of identity', is sufficient."

7

first defendant." *Id.* at 554. Importantly, *Krupski* reiterated that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake." *Id.*

Accordingly, for each newly named defendant, there are two questions that need to be answered. First, whether the newly added party should have known they would be sued except for a mistake concerning the proper party's identity. And, second, whether the newly added party received notice about the pending litigation within the Rule 4(m) period and will not be prejudiced by the mistake. Because the Court concludes that there was no mistake relating to the identity of a named or unknown defendant, Defendants' motion should be granted.

   1.   **Wilson**

In Plaintiff's original complaint, she accused Champaign County and Sheriff Walsh of violating a duty to search Plaintiff for contraband. Specifically, Plaintiff alleged that a "corrections officer did not conduct a search of [Frazier]" and the later strip search was inadequate. Plaintiff's Complaint, d/e #1, Count VII. In Plaintiff's First Amended Complaint, Plaintiff repeats the negligence claims against Champaign County and Sheriff Walsh for failing to search Frazier. Plaintiff makes no attempt in either complaint to name an individual officer responsible for searching Frazier.

Plaintiff includes nothing about inadequate searching in her Second Amendment Complaint. The allegations in Count VII from Plaintiff's Original Complaint and Count XII from the First Amended Complaint are completely omitted from the Second Amended Complaint. Plaintiff's failure to include anything in her Second Amended Complaint about inadequate searching indicates, at least at that time, a deliberate choice to drop any claims related to the search.

By the Third Amended Complaint, Plaintiff brings back claims relating to inadequate searching. Although not particularly clear, it seems that Plaintiff attempts to hold Wilson responsible for the initial failures. That is, according to the Third Amended Complaint, Plaintiff alleges that Wilson had a duty to search Frazier at the time she was admitted into the jail. Plaintiff further alleges that Wilson failed to ascertain whether Frazier had been searched prior

8

to her arrival at the jail and that Wilson failed to search Frazier, including her retractable cane.[6] Plaintiff's Third Amended Complaint, d/e #59, p. 4, ¶ 19.

As demonstrated by the pleadings in the Original Complaint, Plaintiff was aware of facts surrounding the search at the outset of this litigation. Any reasonable person reading the Original Complaint would know that Frazier somehow smuggled pills into the jail. Plaintiff, in her Original Complaint and First Amended Complaint, sued the County and Walsh for his subordinate officers' failure to perform an adequate search. Yet, Plaintiff made no attempt to sue any individual corrections officer for this conduct.[7]

Moreover, Plaintiff's Second Amended Complaint alleges nothing about the failure to search. After the Second Amended Complaint, any reasonable person (including Wilson) would understand that Plaintiff no longer found fault with the search procedures. She had made a conscious choice to abandon the search related claims, choosing instead to sue those individuals involved in Frazier's allegedly deficient medical care.

To make this decision, Plaintiff did not need to know Wilson's name or identity, but at the very minimum she needed to assert sufficiently a claim, within the limitations period, that would put Wilson on notice of Plaintiff's intent to file a claim against the unidentified corrections officers involved in the search. Plaintiff wholly failed to do this. There is nothing in the first three complaints that would have put Wilson on notice that he would have been sued except for a mistake about his identify. Accordingly, Defendants' Motion to Dismiss Wilson is granted.

**2.     Burgener**

The analysis for Burgener is nearly identical to that for Wilson. In addition to the allegations relating to the generic "corrections officer" discussed above, however, Plaintiff's

---

[6] It is unclear from Plaintiff's Third Amended Complaint why the failure to inspect the retractable cane is relevant. Drawing all reasonable inferences in favor of Plaintiff, as the Court must, the Court assumes Plaintiff is alleging that Frazier had the medication hidden in the retractable cane.

[7] Moreover, Plaintiff's own expert, Lisa Feather, in her Rule 2-622 Report expressly stated that Frazier's care or lack of care was below the standard of care based on "[f]ailure to adequately search Toya Frazier for pills on her person (how did Toya Frazier have multiple medications in her possession at the time of her death?)." Thus, Plaintiff's own expert has been of the opinion that Frazier was inadequately searched from the outset of this litigation. Plaintiff knew or should have known that she needed to, at the very minimum, name "some unknown officer(s)" who failed to search Frazier based on her own expert's conclusions.

prior complaints included other allegations about an unknown officer later identified as Bergener. Plaintiff maintained that "at or about 5:00 p.m., a correctional officer and a daytime trustee were collecting the evening meal trays and noticed that Frazier did not touch her meal." Plaintiff's Second Amended Complaint, d/e # 36, p. 6, ¶ 33. Plaintiff then alleged that this "correctional officer" sought medical assistance. Like Wilson, Plaintiff did not name this unknown officer or Bergener as a defendant in the prior complaints.[8]

For the first time, the Third Amended Complaint clarifies that this unknown correctional officer is Burgener. *See* Plaintiff's Third Amended Complaint, d/e #59, p. 8, ¶¶ 51-52. These previously alleged facts, however, do not form the basis for Plaintiff's current claims against Bergener.

Instead, the Third Amended Complaint alleges that Burgener "inspected Frazier's person and property" and "did not discover any contraband." Plaintiff further alleges that Bergener allowed Plaintiff to keep her knee brace and retractable cane. Based on these facts, Plaintiff brings against Bergener a state law claim for wrongful death stemming from her alleged failure to search Frazier "in a timely manner upon her arrival at Campaign County Jail." Plaintiff's Third Amended Complaint, d/e #59, p. 15, ¶ 98.

For the same reasons expressed above in relation to Wilson, these claims against Bergener are too late. Plaintiff demonstrated no intent to sue Bergener, or any other person individually responsible for the inadequate search, before the Third Amended Complaint. There was no reason that Bergener should have known that this action would have been brought against her but for a mistake concerning her identity. Defendants' Motion to Dismiss Bergener is granted.

3. **Goodwin**

---

[8] For some time, the Seventh Circuit adhered to the so-called John Doe rule, which provided that "'relation back' on grounds of mistake concerning the identity of the proper party does not apply where the plaintiff simply lacks knowledge of the proper defendant." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). The Seventh Circuit has not expressly addressed whether this rule survived the Supreme Court's decision in *Krupski*, and district courts in this circuit have reached opposite conclusions. *See Cheatham v. City of Chicago*, 2016 WL 6217091, at *3 (N.D. Ill. Oct. 25, 2016) ("Courts in this district disagree on whether lack of knowledge of a defendant's identity counts as a mistake post-*Krupski*.") (citing cases); *White v. City of Chicago*, 2016 WL 4270152, at *17 (N.D. Ill. Aug. 15, 2016) (citing cases); *Clair v. Cook Cnty.*, 2017 WL 1355879, at *3-4 (N.D. Ill. Apr. 13, 2017); *Bagley v. City of Chicago*, 2018 WL 3545450, at *3 (N.D. Ill. July 24, 2018) (holding that the John Doe rule did not survive Krupski ). The Court need not address this question here because Plaintiff made no attempt at any time to name a John Doe or Unknown Officer.

Procedurally, Goodwin presents a slightly different question. Goodwin was named as a defendant in Plaintiff's Complaint and First Amended Complaint. However, after the Court dismissed Goodwin from the First Amended Complaint, *see* d/e #35, Plaintiff filed a Second Amended Complaint (#36) that contained no claims against Goodwin. Plaintiff subsequently filed a Third Amended Complaint (#59), adding back in the claim against Goodwin with additional factual allegations. Therefore, the question before the Court is whether the claims against Goodwin in the Third Amended Complaint relate back to the claims against him in the First Amended Complaint, when all claims against him were previously dismissed and then voluntarily removed from an intervening Second Amended Complaint.

Plaintiff argues that because Goodwin was named in the Original and First Amended Complaints that he was clearly on notice of Plaintiff's intention to name him as a Defendant within the Rule 4(m) period. Thus, despite his omission from the Second Amended Complaint, he should not be surprised at being brought back into this lawsuit with the Third Amended Complaint. Defendants, on the other hand, argue that Plaintiff clearly knew of Goodwin from the outset of this litigation and therefore his omission from the Second Amended Complaint was a "conscious choice" and not a mistake as to his identity. While this particular issue is not clear, the Court agrees with Defendants.

*Krupski* provides that when a plaintiff is fully aware of a potential defendant's identity and makes a conscious choice not to name that person as a defendant, there is no mistake and Rule 15(c)(1)(C) is inapplicable. *Krupski*, 560 U.S. at 549 ("We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity."); *See also Bilik v. Hardy*, 2018 U.S. Dist. LEXIS 144176, * 21-*22 (N.D. Ill. 2018) ("Rule 15(c) is inapplicable 'when the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity'" (*citing Krupski*, 560 U.S. at 538)); *Perales v. Cty. of LaSalle*, 2017 U.S. Dist. LEXIS 126839, at *15 (N.D. Ill. 2017) ("Relating back generally occurs where the proper defendant is already before the court and the Rule can merely correct the name under which the defendant has been sued, but a plaintiff fails to meet the requirements of Rule 15(c) when the original and amended complaint taken

together demonstrate that the plaintiff chose not to include the defendant in the original complaint.").

This case falls squarely outside Rule 15(c)(1)(C). In naming Goodwin in her first two complaints, Plaintiff demonstrated a clear understanding of Goodwin's identity. This is not a situation where Goodwin understood, or should have understood, "that he escaped suit during the limitations period only because Plaintiff misunderstood a crucial fact about his identity." *Krupski*, 560 U.S. at 550. Rather, Plaintiff knew exactly who Goodwin was; he was named in the first two complaints and, while not named as a Defendant, his name also appeared in the Second Amended Complaint. When Plaintiff filed her Second Amended Complaint that contained no claims directed at Goodwin, Goodwin should have "legitimately believed" that he was no longer at risk to be sued and therefore had a strong interest in repose. *Krupski*, 560 U.S. at 550.

Moreover, while Rule 15(c)(1)(C) is focused on what a Defendant knew or should have known during the Rule 4(m) period, the Rule also permits the Court to look at Plaintiff's conduct during the Rule 4(m) period "[t]o the extent that [Plaintiff's] post-filing conduct informs the prospective defendant's understanding of whether [Plaintiff] initially made a mistake concerning the proper party's identity." *Id.* at 553-554 (*citing Leonard v. Parry*, 219 F.3d 25, 29 (1st Cir. 2000)) ("[P]ost-filing events occasionally can shed light on the plaintiff's state of mind at an earlier time" and "can inform a defendant's reasonable beliefs concerning whether her omission from the original complaint represented a mistake (as opposed to a conscious choice))." Here, Plaintiff's post-filing conduct is telling. Plaintiff filed two Complaints that included Goodwin, then left him out of the Second Amended Complaint, which was filed outside the statute of limitations period. When Plaintiff filed a Second Amended Complaint, outside the statute of limitations with no claims against Goodwin (and therefore no argument that her claims against Goodwin related back to the First Amended Complaint), it was entirely reasonable for Goodwin to believe, based on Plaintiff's conduct, that Plaintiff made a conscious choice to drop him from this lawsuit.[9]

---

[9] It is worth nothing that Plaintiff's First Amended Complaint (#19) was also filed outside the statute of limitations period. Defendants, however, made no arguments that the claims in the First Amended Complaint were barred by the statute of

Plaintiff's Third Amended Complaint does contain some additional facts related to Goodwin that were not in the previous three Complaints. Plaintiff seems to argue, based on the inclusion of these new facts, that she should be allowed to rename Goodwin as a Defendant. If this position were accepted, a plaintiff, at the outset, could completely avoid the statute of limitations and Rule 15 by naming every conceivable person as a defendant. Plaintiff could, in theory, name everyone and anyone in her original complaint. Following Plaintiff's logic, this would preserve all claims against everyone, and from that point forward, Plaintiff could dismiss and add parties at will without regard for the statute of limitations or the requirements of Rule 15. This clearly is not what was intended, and Rule 15 does not extend an open invitation to re-file against dismissed parties at any time. *See*, e.g., *Wandrey v. Service Business Forms, Inc.*, 762 F.Supp. 299, 303 (D. Kan. 1991) (relation back cannot be used to re-file against dismissed defendants after the statute of limitations has expired); *Nite & Day Power Techs. v. Corporate Capital Res., Inc., Civ. No. 89–20298*, 1995 WL 7942, at *5 (N.D. Cal. Jan. 5, 1995) (no relation back when defendants were dismissed from an action and later renamed in an amended complaint).

In short, the Court finds that Plaintiff's decision to exclude Goodwin as a Defendant in her Second Amended Complaint, being fully aware of his identity and his role in the case, was a conscious omission rather than a mistake about his identity. Therefore, the relation back principles of Rule 15(c)(1)(C) do not apply. Defendants' Motion to Dismiss Goodwin is granted.

**4.   Plaintiff's Remaining Arguments**

As previously noted, Plaintiff has made a number of arguments that require little or no attention from the Court. First, Plaintiff argues that Wilson, Burgener, and Goodwin knew or should have known that they would be named as Defendants simply because they have been heavily involved in the investigation. But, involvement in the underlying situation and the subsequent investigation does not alone put a person on notice that a plaintiff intended to sue them. This is especially true where the plaintiff made a deliberate choice to sue certain parties

---

limitations, as they clearly related back to the Original Complaint. Likewise, although the Second Amended Complaint was also filed outside the statute of limitations, Defendants did not move to dismiss the Second Amended Complaint on statute of limitations grounds as Plaintiff did not attempt to add any new parties or claims.

13

instead of others without any mistake concerning the proper party's identity. *See, e.g., Haroon v. Talbott*, 2017 U.S. Dist. LEXIS 158522, at \*24-\*25 (N.D. Ill. 2017) (In rejecting a relation back argument, the court opined that "Plaintiff's litigation strategy, combined with his pleading scheme, made it reasonable for [the defendant] to believe that, although he was involved in the suit as a major witness, the plaintiff made 'a deliberate choice to sue one party . . . instead of another.'") (*citing Krupski*, 560 U.S. at 549) (emphasis added).

Plaintiff also spends a great deal of time addressing the question of notice during the Rule 4 period. Because the Court finds that there was no mistake about identity, the Court need not address whether the parties were properly served under Rule 4 or otherwise had notice of the lawsuit so as to avoid being prejudiced in defending on the merits.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Clayton Goodwin, Jessica Burgener, Howard Wilson, and Dan Walsh from Plaintiff's Third Amended Complaint (#83) is GRANTED. Paragraph six (6) of Plaintiff's Third Amended Complaint (#96), naming Walsh as a party, is stricken. Defendants Wilson, Burgener, and Goodwin are dismissed with prejudice.

ENTERED this 11th day of December, 2018.

s/ERIC I. LONG<br>UNITED STATES MAGISTRATE JUDGE