E-FILED
Wednesday, 03 July, 2019  12:51:11 PM
Clerk, U.S. District Court, ILCD

750-2074           RPV           #6191112

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| JACQUELINE JONES , | ) | |
| INDEPENDENT ADMINISTRATOR | ) | |
| of the ESTATE of TOYA D. FRAZIER, | ) | |
| DECEDENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No.: 16 cv 02364 |
| | ) | |
| SERGEANT ARNOLD MATHEWS; | ) | |
| CECILE KEMP, LPN; BETH NOVAK, RN ; | ) | |
| and CORRECT CARE SOLUTIONS, LLC; | ) | |
| CHAMPAIGN COUNTY, ILLINOIS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### THE MEDICAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants CECILE KEMP, BETH NOVAK and CORRECT CARE SOLUTIONS, LLC, (referred to jointly as the Medical Defendants), through their attorneys, ROBERT P. VOGT and VOGT & O'KANE, submit this reply in support of their Motion for Summary Judgment.

### The Plaintiff's Disputed Material Facts

It is initially important to note that the plaintiff's "B. Disputed Material Facts" responses (pgs. 11-12) fail to comply with the Central District Local Rules in several respects.

First, the Medical Defendants object to the plaintiff's practice of including additional facts in the plaintiff's Responses to the Medical Defendants Undisputed Material Facts (*See* Sec. "B" of the Plaintiff's Response). It is improper for the nonmoving party to add additional facts to her Local Rule 7.1 (D)(2) (b) response; any additional facts that the nonmoving party wishes to include

belong in a separate statement. *Ciomber v. Coop Plus, Inc*., 527 F.3d 635, 643 (7th Cir. 2008); *Amands v. Aramack*, 368 F.3d 809, 817 (7Th Cir. 2004). The plaintiff's alleged additional facts set forth in her responses to the Medical Defendants' Undisputed Material Facts should be either stricken, *Amands*, 368 F.3d at 817, or disregarded. *De*, 912 F. Supp. 2d 709, 715 (N.D. Ill. 2012).

Second, the plaintiff's Responses to Pars. 5, 8, 20, 22, 23, 24, 26, 32, 49 cite either no evidence whatsoever or rely on inadmissible speculation or hearsay. This is improper as a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Smith v. Lamz*, 321 F.3d 680, 683 (78th Cir. 2003); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir.1993). In addition, speculative assertions and hearsay are improper under Rule 56. *Borcky v. Maytag Corp*., 248 F. 3d 691, 695 (7th Cir. 2001); *Eisenstadt v. Cental Corp.*, 112 F.3d 738, 742 (7th Cir. 1997).

Third, and perhaps even more concerning, the plaintiff repeatedly asserts that Undisputed Material Facts set forth by the Medical Defendants are "disputed" even though the factual support for the Medical Defendants' Undisputed Material Facts *is the testimony of the plaintiff's own experts*. *See* Plaintiff's Responses in "B. Disputed Material Facts" for Pars. 10, 11, 12, 13, 16, 18, 19, 20, 22, 23, 24, 26, 32, 33, 35, 36, 38, 44, 47, 48. These efforts are disingenuous and should be disregarded.

### The Medical Defendants Reply to the Plaintiff's Additional Material Facts

48.     Nurse Novak and Nurse Kemp negligently failed to follow the policies of their employer.  Kemp admitted under oath that she did not know the policies of her employer.

**REPLY:**     The Medical Defendants dispute this allegation. There is no supporting evidence cited by the plaintiff for this allegation. Factual allegations made in connection with summary judgment must "be supported by evidentiary documentation referenced by specific page." Local Rule 7.1 (D)(2) (b) (2), (5); *See also Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000); *De v. City of Chicago*, 912 F.Supp.2d 709, 712 (N.D. Ill. 2012).  No witness

has testified that the Nurse Defendants failed to follow any CCS "policy." In addition, no "policy" is identified by the plaintiff, so the Medical Defendants do not know to what policy the plaintiff is referring. A nonmoving party cannot rely on vague assertions in her response because the moving party must be able to ascertain the allegations made by the nonmoving party so that it may properly respond. *De,* 912 F.Supp.2d at 713; *Greer v. Bd. Of Educ. Of City of Chi., Ill.,* 267 F.3d 723, 727 (7th Cir. 2001).

49.    As stated *supra*, the nurses are responsible for improper documentation that does not accurately reflect medication passes or assessment.

> **REPLY:**    The Medical Defendants dispute this allegation. There is no supporting evidence cited by the plaintiff for this allegation. Factual allegations made in connection with summary judgment must "be supported by evidentiary documentation referenced by specific page." Local Rule 7.1 (D)(2) (b) (2), (5); *See also De,* 912 F.Supp.2d at 712; *Malec,* 191 F.R.D. at 584. The plaintiff was administered hypertension medication (HCTZ) during the afternoon of November 30, 2015, (Novak Aff., par. 7), and HCTZ and Tylenol during the morning med pass on December 1, 2015. (Kemp Aff., par. 3). Ms. Frazier was also provided her first dose of heroin withdrawal medications on December 1, 2015. (Novak Dep., par. 11). In addition, the plaintiff does not identify what "improper documentation" she is referring to or how or why that documentation is allegedly improper. A nonmoving party cannot rely on vague assertions in her response because the moving party must be able to ascertain the allegations made by the nonmoving party so that it may properly respond. *De,* 912 F.Supp.2d at 713; *Greer v. Bd. Of Educ. Of City of Chi., Ill.,* 267 F.3d 723, 727 (7th Cir. 2001).

50.    The policies of Correct Care Solutions were not followed by Nurse Novak and she did not warn the correctional officers that Ms. Frazier required a second COWS assessment on November 30, 2015. (Ex. 12 Feather Dep. p. 125 lines 8-17, pp. 129-131, p. 139, ln 13).

> **REPLY:**    The Medical Defendants dispute this allegation and Ms. Feather's cited testimony *does not* support the plaintiff's allegation. Ms. Feather *never* testified that the nurses were somehow required to tell the correctional officers that the correctional officers needed to perform a COWS assessment of Ms. Frazier during the overnight hours and CCS' policies also do not require Nurse Novak to do such a thing. In addition, no "policy" is identified by the plaintiff, so the Medical Defendants do not know to what policy the plaintiff is referring. A nonmoving party cannot rely on vague assertions in her response because the moving party must be able to

ascertain the allegations made by the nonmoving party so that it may properly respond. *De,* 912 F.Supp.2d at 713; *Greer v. Bd. Of Educ. Of City of Chi., Ill.,* 267 F.3d 723, 727 (7th Cir. 2001).

51.     When Ms. Frazier's COWS score went from 0-7, Nurse Novak should have looked deeper into her symptoms and their cause.  If they had intervened at that time, her death may have been prevented.

> **REPLY:**     The Medical Defendants dispute this allegation. There is no supporting evidence cited by the plaintiff for this allegation.  Factual allegations made in connection with summary judgment must "be supported by evidentiary documentation referenced by specific page." Local Rule 7.1 (D)(2) (b) (2), (5); *See also De,* 912 F.Supp.2d at 712; *Malec,* 191 F.R.D. at 584. In addition, it is undisputed that in response to Ms. Frazier's "mild" withdrawal symptoms, Dr. Fatoki was contacted and the proper withdrawal medications were ordered and provided to Ms. Frazier. (Feather Dep., pg. 76, 104; Novak Aff., par. 4).  The plaintiff and the plaintiff's nursing expert admit that this was the appropriate response for Nurse Novak to take. (Feather Dep., pg. 76). *See also,* Pl's Response, par. 15.

52.     The nurses should have checked for contraband. (Ex. 12 Feather Dep., pp. 166-167).

> **REPLY:**     The Medical Defendants dispute this allegation as this is a gross misstatement of Ms. Feather's testimony. Ms. Feather was clear that nurses in a jail setting do not search inmates. (Feather Dep., pg. 100). The plaintiff's correctional expert agrees. (Schwartz Dep., pg. 200). To be sure, Ms. Feather conceded that her reference to nurses searching patients only relates to an emergency room setting and that even in the emergency room, 99.9% of patients are *not* searched by the nursing staff. (Feather Dep., pg. 181).

53.     Ms. Frazier required another drug to soothe her withdrawals.   Withdrawal medications were needed overnight to fight the severe withdrawal symptoms.  Nurse Kemp should have instructed correctional officers that Ms. Frazier should be looked after overnight to check for withdrawal symptoms.   They also should have been told to repeat the COWS assessment overnight.  (Ex. 12 Feather Dep., pp. 89-90; Ex. 19 Policy #8-557).

**REPLY:**     The Medical Defendants dispute these allegations. The first three allegations cite no evidentiary support. Factual allegations made in connection with summary judgment must "be supported by evidentiary documentation referenced by specific page." Local Rule 7.1 (D)(2) (b) (2), (5); *See also De,* 912 F.Supp.2d at 712; *Malec,* 191 F.R.D. at 584. In addition, the pages cited in Ms. Feather's deposition as supporting the fourth statement do not support the plaintiff's allegation. Ms. Feather *never* testified that the nurses were somehow required to tell the correctional officers that the correctional officers needed to perform a COWS assessment of Ms. Frazier.

**THE MEDICAL DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.**
**Jail Nurses Do Not Search Incoming Inmates**

The plaintiff's Response first asserts that Ms. Frazier was "negligently searched" by the Nurse-Defendants.  (Pl's Resp., pg. 2).

However, the plaintiff's own expert, Ms. Feather, squarely testified that nurses do not perform searches in a jail environment. (Feather Dep., pg. 100).  The testimony of the plaintiff's correctional expert mirrored that of Ms. Feather: "I know of nowhere where nurses do searches, that's right." (Schwartz Dep., pg. 200).

Furthermore, none of the complaints that the plaintiff has filed with this Court allege that the nurse-defendants had a duty to search newly arriving inmates.[1]

Raising new claims for the first time in a response to a motion for summary judgment is improper. *Austin v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997); *Ames v. Shaw*, 2018 WL 6435656 (N.D.Ill. 2018) (holding that "Plaintiff cannot amend his theory of the case by way of his summary judgment briefs; accordingly, this new theory of the case cannot defeat summary judgment"); *Savage v. Finney*, 2012 WL 2374687, at *3 (N.D. Ill. 2012) (noting that "a brief cannot amend a complaint and add new legal claims" and collecting cases).

**II.**
**The Feather and Fowlkes Rule 26 Reports are Inadmissible Hearsay**

The plaintiff's Response repeatedly cites to the Rule 26 Reports prepared by Ms. Feather (Pl's Resp., pgs. 10, 15, 19) and Dr. Fowlkes (Pl's Resp., pgs. 11, 13, 15, 16, 28).

---

[1] This new accusation by the plaintiff was also never disclosed by Ms. Feather, the plaintiff's nursing expert.  None of Ms. Feather's reports suggest that the Nurse-Defendants were responsible for searching new inmates coming into the Jail.

6

Federal District Courts sitting in Illinois have repeatedly recognized that Rule 26 expert reports such as those prepared by Ms. Feather and Dr. Fowlkes are inadmissible hearsay. *See, e.g., Ramirez v. City of Chicago*, 2010 WL 4065615 (N;D; Ill. 2010)*; Thakore v. Universal Machine Co. of Pottstown, Inc.,* 670 F.Supp.2d 705, 724–725 (N.D.Ill.2009) (expert reports under Rule 26 are not independently admissible); *Gentieu v. Tony Stone Images/Chicago, Inc.,* 214 F.Supp.2d 849 (N.D.Ill.2002). The Seventh Circuit has also noted that expert reports are hearsay. *Bucklew v. Hawkins, Ash*, *Baotie & Co*, 328 F.3d 923, 927 (7th Cir. 2003).

Hearsay is just as inadmissible at summary judgment as it is at trial. *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997). A party cannot rely on hearsay to support a summary judgment response. *Rogers v. City of Chi.*, 320 F.3d 748, 751 (7th Cir. 2003).

### III.
### The Plaintiff's Allegations Regarding "Poor Record Keeping" Lack Merit And Have No Casual Connection to Ms. Frazier's Death

The plaintiff also complains that "poor record keeping of the nurses violated the standard of care." (Pl's Resp., pgs. 26-27). However, the testimony from the plaintiff's own nursing expert destroys the plaintiff's claim. As Ms. Feather confirmed:

> Q:  And all of these documentation matters, by the way, you would agree – and I think you have described them as nitpicky things, correct?
>
> A:  Yes.
>
> Q:  They had no impact on Ms. Frazier's outcome, right?
>
> A:  Correct.

(Feather Dep., pg. 144).

The plaintiff's "poor record keeping" allegation is baseless and has no connection whatsoever to Ms. Frazier's death.

## IV.
## <u>Nurse Novak Had No Obligation to Tell the Correctional<br>Officers How to Perform Their Duties.</u>

The plaintiff repeatedly asserts that Nurse Novak failed to warn the correctional officers that Ms. Frazier might go thru heroin withdrawal after Nurse Novak left the Jail on November 30, 2015. (<u>Pl's Resp</u>., pgs. 24, 25, 26, 28, 29). There are several flaws with this assertion.

First, no witness in this case, expert or otherwise, has testified that Nurse Novak had a duty to tell the correctional staff how to perform their jobs. This is clearly an area requiring expert testimony but, the plaintiff has none.

Second, none of the plaintiff's complaints filed with this Court state, suggest, or even imply that Nurse Novak had a duty to tell the overnight correctional staff to be on the lookout for Ms. Frazier's withdrawal symptoms.[2]  Raising new claims for the first time in a response to a motion for summary judgment is improper. *Austin v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997); *Ames v. Shaw*, 2018 WL 6435656 (N.D.Ill. 2018).

Third, it is undisputed that when Nurse Novak performed her COWS assessment of Ms. Frazier during the afternoon hours of November 30, 2015, Ms. Frazier scored a "0." (<u>Feather Dep.</u>, pg. 61; <u>Nurses</u> 0013; <u>Novak Aff.</u>, par. 8). In fact, the parties agree that Ms. Frazier *did not even begin* to suffer her heroin withdrawal abdominal complaints until about 2:00 a.m. on December 1, 2015 – some 9 hours *after* Nurse Novak left the Jail. (<u>Pl's Resp.</u>, par. 9). Thus, Nurse Novak could not have warned the correctional officers about looking out for something that had not yet occurred, and which Nurse Novak knew nothing about.

## V.
## <u>Whether Ms. Frazier Overdosed on Diphenhydramine or Died from an Allergic Reaction<br>to Diphenhydramine is Immaterial</u>

---

[2] This new allegation was also never disclosed in any of the Rule 26 Reports filed by Ms. Feather.

The parties agree that Ms. Frazier died from diphenhydramine toxicity. (Pl's Resp., par. 21).  The parties also agree:

> The diphenhydramine that Ms. Frazier ingested came from the medications that Ms. Frazier secretly smuggled into the Jail and which she secretly ingested.

(Pl's Resp., par. 27).

In light of this undisputed evidence, whether Ms. Frazier's death was due to an allergic reaction or to an overdose makes no difference.[3] To establish liability, the plaintiff must show that the Nurse-Defendants had subjective knowledge that: (1) Ms. Frazier possessed contraband medications containing diphenhydramine; and (2) Ms. Frazier was going to ingest those same medications.  *Pettie v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Rice v. Correctional Medical Services*, 675 F.3d 650, 680-682 (7th Cir. 2012).

Here, it is uncontested that the Nurse-Defendants had no subjective knowledge of what Ms. Frazier was doing with her contraband medications and, as a result, the Nurse-Defendants could do nothing to prevent that which they knew nothing about.

## VI.
## CCS Remains Entitled to Summary Judgment

The plaintiff's arguments regarding CCS cite no caselaw, refer to no evidence, and are somewhat confusing. (Pl's Resp., pgs. 30-31).

Nonetheless, to carry the day on her Sec. 1983 claim against CCS, the plaintiff must show that a CCS policy, practice or custom was the "moving force behind the deprivation of [the plaintiff's] constitutional rights." *Johnson v. Cook*, 526 F. App'x 692, 695 (7th Cir. 2013). Here,

---

[3] It is also important to note that the plaintiff's evidentiary support for her argument that Ms. Frazier died from an overdose is inadmissible. Ms. Feather admitted that it was her "speculation" that Ms. Frazier died from an overdose, (Feather Dep., pg. 157), and Dr. Fowlkes' Report is inadmissible hearsay. *See infra*, Section II. In addition, the Medical Defendants previously moved to strike Ms. Feather's supplemental expert reports.  *See* Docs. #82, 99 and 115.

the plaintiff is not even suggesting that the execution of a CCS policy or custom was somehow involved in causing Ms. Frazier's death by diphenhydramine toxicity.

The plaintiff also claims, again without citing any evidentiary support, that CCS should have some type of "check and balance" system in place and that CCS "failed to conduct appropriate supervision of the defendants." (Pl's Resp., pg. 31).

But, both of these assertions are classic examples of the plaintiff's effort to impose *respondeat superior* liability on CCS and, as the Seventh Circuit has previously held, a corporate entity like CCS "cannot be held liable under Sec. 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey,* 408 F.3d 375, 379 (7th Cir. 2005).

CCS is also entitled to summary judgment on the plaintiff's medical malpractice claim.[4] The plaintiff does not dispute that under Illinois common law, if the Nurse-Defendants are not liable, CCS is not liable. *Gant v. L.U. Transport*, 331 Ill. App. 3d 924, 929 (2002); *Thompson v. Northeast Illinois Regional RR*, 367 Ill. App. 3d 373, 376 (2006).

That being the case, since both nursing experts, (Feather Dep., pg. 118, Zegar Dep., pg. 112, 120, and both nurses, Novak Aff., par. 14, Kemp. Aff., par. 6), have all testified under oath that no breach of the standard of care was committed by the Nurse-Defendants, the Nurse-Defendants are entitled to summary judgment and, as a necessary result, CCS is entitled to summary judgment.

Summary judgment should be awarded to CCS.

---

[4] In connection with the plaintiff's negligence claim, the testimony of the plaintiff's nursing expert could not be more clear that she has "no complaints about any breach of the standard of care by the two nurses" who the plaintiff has sued. (Feather Dep., pg. 118).

## VII.
## <u>Conclusion</u>

The parties agree that Ms. Frazier died from diphenhydramine contained in medications that Ms. Feather secretly smuggled into the Jail and which she secretly ingested.  The Medical Defendants had no knowledge of Ms. Frazier's propensity to ingest diphenhydramine or that she ingested medication containing diphenhydramine while she was in the Jail.  Under these circumstances, and for all the reasons set forth in their initial motion, the Medical Defendants are entitled to summary judgment.

Respectfully Submitted,

**VOGT & O'KANE**

By:  /s/ Robert P. Vogt
        Robert P. Vogt

**VOGT & O'KANE**
20 South Clark Street,
Suite 1050
Chicago, Illinois 60603
(312) 236-5151
bvogt@vogtokane.com
pldgs/ Med. Defs.  Reply to Pl's Add. Material Facts

750-2074                         RPV                         #6191112

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

JACQUELINE JONES ,                          )
INDEPENDENT ADMINISTRATOR                    )
of the ESTATE of TOYA D. FRAZIER,            )
DECEDENT,                                    )
                                             )
     Plaintiff,                     )
                                             )
     v.                             )       Court No.: 16 cv 02364
                                             )
SERGEANT ARNOLD MATHEWS;                     )
CECILE KEMP, LPN; BETH NOVAK, RN ;           )
and CORRECT CARE SOLUTIONS, LLC;             )
CHAMPAIGN COUNTY, ILLINOIS                   )
                                             )
     Defendants.                    )

### CERTIFICATE OF SERVICE

I, *Robert P. Vogt*, certify that on **July 3, 2019,** I electronically filed **The Medical Defendants' Reply in Support of Their Motion for Summary Judgment,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

- Brian Michael Smith       bsmith@heylroyster.com, urbecf@heylroyster.com
- Keith Eric Fruehling       kfruehling@heylroyster.com, urbecf@heylroyster.com
- Shayla L Maatuka       shayla@madelaw.net, stevie@madelwaw.net

     Respectfully Submitted,

     **VOGT & O'KANE**

     By: /s/ Robert P. Vogt
          Robert P. Vogt

**VOGT & O'KANE**
Attorneys for Defendants
20 South Clark Street
Suite 1050
Chicago, IL 60603
(312) 236-5151