E-FILED
Wednesday, 03 July, 2019  03:01:05 PM
Clerk, U.S. District Court, ILCD

5590-7
KEF/tlp/kjr

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| JACQUELINE JONES, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF TOYA D. FRAZIER, DECEDENT, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | )  No.:  16-cv-02364 ) |
| SERGEANT ARNOLD MATHEWS; OFFICER JESSICA BURGENER; OFFICER CLAYTON GOODWIN; OFFICER HOWARD WILSON; CECILE KEMP, LPN; BETH NOVAK, RN; and CORRECT CARE SOLUTIONS, LLC; CHAMPAIGN COUNTY, ILLINOIS, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANT MATHEWS' AND CHAMPAIGN COUNTY'S
REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, ARNOLD MATHEWS and CHAMPAIGN COUNTY, ILLINOIS, by KEITH E. FRUEHLING of HEYL, ROYSTER, VOELKER & ALLEN, their attorneys, pursuant to FRCP 56 and CD.ILL-LR 7.1(D)(3), state as follows in support of their Reply:

## I.      INTRODUCTION

Briefly stated, Defendants have two concerns with Plaintiff's Response to Defendants' Motion for Summary Judgment.

First, Plaintiff attempts to dispute facts and/or introduce new facts that are not supported by competent evidence. Some detailed discussion was warranted to address these attempted "disputes", which Plaintiff included in all phases of her "Fact" section. Consequently, Defendants feel compelled to provide a full Reply to all facts, so the Court has all briefing in one location.

The vast majority of this Reply, therefore, consists of the factual briefing on Defendants' Motion, using the numbering Plaintiff had in her Response for purposes of consistency. Defendants also formatted the various fact sections so that each has a clean page break, for easy comparison should the Court print out this Reply.

Second, Plaintiff's argument attempts to hold Defendant Mathews liable under theories of liability (e.g., "failing to search") that have never been asserted as bases of liability against Mathews, involve allegations that occurred when Mathews was not on shift, do not have a factual foundation, and which have been dismissed from this litigation with prejudice. (ECF #83). Defendants have endeavored to only address those issues which, in Defendants' judgment, merited a Reply. Should this Court desire additional briefing on something Defendants have not addressed, Defendants ask for leave to provide such briefing.

## II.   UNDISPUTED MATERIAL FACTS -- REPLY

1.      Defendant Arnold Mathews is a sergeant for the Champaign County Sheriff's Office. (D/E #110, ¶10).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

2.      Defendant Mathews worked at the Champaign County Satellite Jail ("the Jail") from 11:35pm on November 30, 2015 to about 8:30am on December 1, 2015 – also called the "night shift". (Ex. 1, No. 3 – Mathews Interrogatories); (Ex. 2 – Dec. of Mathews, ¶1).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

3.      As a sergeant, Mathews' primary responsibilities during the night shift are to ensure the safety and security of all individuals within both Jail facilities. (Ex. 2 – Dec. of Mathews, ¶4).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

4.      During the night shift, the balance of Mathews' time is spent supervising correctional officers, touring the Jail to ensure he is up to date on the facility's goings-on, and in the sergeant's office located near the booking area. (Ex.2 – Dec. of Mathews, ¶5); (Ex. 1, No. 25 – Mathews Interrogatories).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

6.      Sergeants generally do not conduct cell checks themselves, but may "cover" a cell check when the correctional officers are otherwise engaged. (Ex. 2 – Dec. of Mathews, ¶7).

RESPONSE: Plaintiff does not dispute that sergeants generally do not conduct cell check. However, Defendants' medical expert, Dr. Fowlkes, states in his report that Ms. Frazier remained on constant video monitoring. She was detained in a cell directly across from the booking desk manned by Sergeant Mathews. In addition, the Officer Location Report documents that Defendant Mathews did in fact perform at least one of the cell checks for Toya Frazier. (Ex. 1 - Dr. Fowlkes Report p 15, ¶7; Ex. 2 - Officer Location Report).

**REPLY: Defendants do not understand Plaintiff as disputing Fact no. 6, but nonetheless feel compelled to address the "Additional Facts" Plaintiff includes in her Response.**

**First, Dr. Fowlkes' report is inadmissible hearsay, and therefore is incompetent evidence for a summary judgment motion. FRCP 56(c) (requiring admissible evidence); *see, e.g.*, *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 328–29 (N.D. Ill. 2003) (expert report inadmissible); *Redenbaugh v. Residence Inn*, 2013 U.S. Dist. LEXIS 67515, at *7 n.2 (N.D. Ill. 2013) (expert report inadmissible, not considered on summary judgment).  Furthermore, Dr. Fowlkes' report (like any expert's report) contains his opinions, and cannot be a source of factual information itself. The fact in an expert's report can only be used by a fact-finder for the limited purpose of evaluating bases for the expert's opinion (which Plaintiff**

**does not cite). FRE 703;** *see, e.g., Fisher v. Sellas*, **272 B.R. 233, at \*242–43 (N.D. Ill. Bkrcy. 2002) (under Federal Rules of Evidence – granted, in bankruptcy context – discussing rules and weight given to expert reports on sparse factual record).**

**Second, aside from Dr. Fowlkes report, Plaintiff does not support her claim that Mathews "manned" the booking desk and was "directly across" from Ms. Frazier's cell with any evidence. FRCP 56(e).**

9.      Nurse Beth Novak worked from 8:00am to 5:00pm at the Jail on November 30, 2015 and December 1, 2015. (Ex. 3, No. 20 – Novak Interrogatories); (D/E #63, ¶13). For her part, Nurse Cecile Kemp worked for the Jail as a nurse on December 1, 2015. (Ex. 4, No. 7-8 – Kemp Interrogatories); (D/E #63, ¶12).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

10.      Nurse Novak saw Ms. Frazier at the Jail on November 30, 2015 and December 1, 2015. (Ex. 3, No. 7 – Novak Interrogatories).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

12.      On November 30, 2015, around 9:50am, Ms. Frazier entered the Jail to begin a sentence for Felony Theft. (D/E #110, ¶15).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

14.      Ms. Frazier's housing placement documents reflect the following medical needs: "left knee" and "HBP" (high blood pressure). (Ex. 6 – Assessment/Placement Division Tree – ISP Report).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

15.    Ms. Frazier's "Initial Mental Health Screening Assessment" documents that she was not experiencing withdrawals and not using drugs. (Ex. 7 – ISP Report).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

16.    On November 30, 2015, Ms. Frazier was initially placed in cell F2 with a medical designation. (D/E #110 ¶27).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

17.    While at the Jail, Ms. Frazier was permitted to keep her knee brace and cane. (D/E #110, ¶24).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

18.    On November 30, 2015, around 1:00pm, Ms. Frazier was evaluated by Nurse Novak, as documented by the CCS "Receiving Screening". (Ex. 8 – Medical Screening – ISP Report).

RESPONSE: Plaintiff does not dispute the facts alleged except to state that the evaluation was done at 1:25pm.

**REPLY: Plaintiff's Response is not supported by any factual citation. FRCP 56(e).**

19.    On this "Receiving Screening", it is documented (among other things) that Ms. Frazier had high blood pressure, last consumed alcohol about two weeks ago, had experienced drug withdrawal three years previously, and denied presently being in any pain. (Ex. 8 – Medical Screening – ISP Report).

5

RESPONSE: Plaintiff does not dispute the facts alleged but adds that the Receiving Screening states that Ms. Frazier last used heroin the night before she was detained.

**REPLY: See UMF #20.**

20.     The document also has the phrase "Heroin – yest 8:30pm 11/30/15" written on it.

(Ex. 8 – Medical Screening).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

21.     On November 30, 2015, Ms. Frazier was also assessed for heroin withdrawal by a

nurse at the Jail. (Ex. 9 – COWS Sheet).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

22.     This assessment was documented on Ms. Frazier's "Emerald COWS Score Sheet"

("COWS"), and reflected that Ms. Frazier demonstrated or communicated no signs or symptoms

of withdrawal. (Ex. 9 – COWS Sheet).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

23.     Also on November 30, 2015, Ms. Frazier was assessed for alcohol withdrawal –

she demonstrated no signs or symptoms to the nurse evaluator. (Ex. 10 – CIWA-AR Sheet).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

24.     At some point on November 30, 2015, Ms. Frazier was placed in cell H4 with

another female inmate. (D/E #110, ¶28).

RESPONSE: Plaintiff does not dispute the facts alleged.

6

**REPLY: N/A**

26.     When Mathews first noticed Ms. Frazier, she was in cell H4 in the booking area with a female cellmate. (Ex. 2 – Dec. of Mathews, ¶¶9, 12).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

27.     There is no evidence that Ms. Frazier made any noise or manifested any symptoms of distress from 11:35pm until somewhere in the 2:30am to 3:00am timeframe. (Ex. 11, "103 H1" to "119 H4"); (Ex. 2 – Dec. of Mathews, ¶19).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

28.     Between or around 2:30am and 3:00am on December 1, 2015, Ms. Frazier would intermittently moan and groan loud enough that Mathews could hear her. (D/E 110, ¶31); (Ex. 2 – Dec. of Mathews)

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

30.     Mathews and other on-call correctional officers responded to Ms. Frazier's calls several times to figure out what the matter was. (Ex. 2 – Dec. of Mathews, ¶¶16-17).

RESPONSE: Plaintiff does not dispute that the correctional officers responded but does dispute that they responded appropriately as they should have checked her vital signs, performed a COWS assessment, or called the on-call physician for guidance.

**REPLY: Defendants do not understand Plaintiff's response to indicate a substantive dispute of UMF #30. To the extent it is, Plaintiff has not cited any authority to support her contention for what the officers references in UMF #30 should have done, in Plaintiff's opinion. FRCP 56(e).**

35.     Around 2:50am, Ms. Frazier moved from cell H4 to H1. (D/E #110, ¶33); (Ex. 2 –

Dec. of Mathews, ¶20); (Ex.11, "123 Booking").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

36.     When Ms. Frazier moved from cell H4 to H1, she was able to walk under her own

power – albeit with assistance from a cane. (Ex. 2 – Dec. of Mathews, ¶22); (Ex. 11, "123

Booking").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

40.     While kicking, Ms. Frazier would be laying on her sleeping mat on the floor, and

would kick the cell door from this position. (Ex. 11, "142 H1" to "143 H1"; "147 H1" to "148 H1");

(Ex. 2 – Dec. of Mathews, ¶24).

RESPONSE: This is not in dispute but instead of checking on her, Mathews kicked the cell door
as well at 6:04am as seen on the cameras in Booking South and H1 (Ex. 16 f. Videos 15 & 16). He
also kicked her feet back into the room at 4:43am. (Ex. 16 e. Video 8).

**REPLY: Defendants do not understand Plaintiff's Response to be a "dispute", but rather to
contain an Additional Material Fact.**

**To that end: it is <u>undisputed</u> and <u>immaterial</u> that the Jail's security footage shows
Defendant Mathews placing his foot on the door to Ms. Frazier's cell at 6:04am. This is
<u>immaterial</u>, because there is no evidence that Defendant Mathews believed Ms. Frazier
was suffering a medical emergency at this time, and no evidence establishing what Ms.
Frazier was communicating (if anything) when Mathews was at her door at that time. (Ex.
2 – Dec. If Mathews, ¶¶ 8, 26–27, 33–34).**

41.    Mathews and/or his fellow on-duty correctional officers responded to Ms. Frazier's kicks repeatedly. (Ex. 11, "142 H1" to "143 H1"; "147 H1" to "148 H1"; "151 H1"); (Ex. 2 – Dec. of Mathews, ¶25).

RESPONSE: Plaintiff does not dispute the facts alleged but does dispute that the response was appropriate as they should have checked her vital signs, performed a COWS assessment, or called the on-call physician for guidance.

**REPLY: Defendants do not understand Plaintiff's response to indicate a substantive dispute of UMF #41. To the extent it is, Plaintiff has not cited any authority to support her contention for what the officers references in UMF #30 should have done, in Plaintiff's opinion. FRCP 56(e).**

44.    At some point, Mathews instructed a correctional officer to pull Ms. Frazier's sleeping mat away from the door, so she could not kick it. Jail security footage shows this happening at around 4:45am, 4:53am, and 5:26am. (Ex. 2 – Dec. of Mathews, ¶28); (Ex. 11, "142 H1" to "143 H1"; "147 H1").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

46.    Any time Ms. Frazier's mat was pulled away from her cell door, she eventually would move her mat back and continue kicking the door. (Ex. 2 – Dec. of Mathews, ¶30); (Ex. 11, "142 H1" to "143 H1"; "147 H1").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

49.    At some point in between 6:30am and 7:00am, Ms. Frazier told Mathews her stomach hurt due to heroin withdrawal. Jail security footage suggests this exchange most likely happened around 6:45am. (Ex. 2 – Dec. of Mathews, ¶33); (Ex. 11, "151 H1").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

50.     After learning this, Mathews told Ms. Frazier he would let the nurse know. (Ex. 2 –
Dec. of Mathews, ¶35).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

52.     Jail security footage shows that Ms. Frazier gives her door a few stray kicks after
Mathews leaves it, around 6:45am. This is the last time Ms. Frazier kicks her door. (Ex. 11, "151
H1").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

53.     Mathews then sent an email to the Jail's medical staff, asking them to see Ms.
Frazier because she said her stomach hurt due to heroin withdrawal. This email was sent at
7:05am. (Ex. 2 – Dec. of Mathews, ¶37); (Ex. 12 – Mathews Email).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

54.     When Mathews sent this email, he knew the Jail's medical staff would be at the
Jail soon. (Ex. 2 – Dec. of Mathews, ¶38).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

55.      Jail security footage does not show Ms. Frazier kicking her door for the rest of Mathews' shift or her stay at the Jail, and that she was consistently monitored by correctional officers every 15 minutes throughout the day. (Ex. 11, "151 H1" to "200 H1").

RESPONSE: Plaintiff does not dispute that Ms. Frazier did not kick the door nor that the correctional officers swiped the cell check monitors but does dispute that proper cell checks were performed.

**REPLY:      Defendants do not understand Plaintiff's response to indicate a substantive dispute of UMF #55. To the extent it is, Plaintiff has not cited any authority to support her contention for what the officers references in UMF #30 should have done, in Plaintiff's opinion. FRCP 56(e).**

56.      There is no evidence that Ms. Frazier moaned, or otherwise summoned any correctional officers to her cell for the remainder of Mathews' shift. (Ex. 11, "151 H1 to "200 H1").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

57.      There is no evidence that Mathews interacted with Ms. Frazier for the remainder of his shift. (Ex. 11, "151 H1" to 158 H1").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

59.      At some point between sending the email and ending his shift, Mathews encountered a Jail nurse and told her directly that Ms. Frazier complained of stomach pain that was caused by heroin, and that he also sent the medical staff an email about the same. To the best of his recollection, this conversation occurred near the Jail's infirmary (which is not in the Booking area of the Jail). (Ex. 2 – Dec. of Mathews, ¶40).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY:N/A**

60.      Medical staff saw Ms. Frazier when they distributed medications to the Jail's

detainees on December 1, 2015, around 9am. (Ex. 11, "163 H1").

RESPONSE: This is not in dispute but the medication pass was made at 9:12am.

**REPLY:N/A**

63.      On December 1, 2015 around 11:30am, a COWS screening was completed for Ms.

Frazier, showing that she was experiencing "mild" withdrawal symptoms. (Ex. 9 – COWS Sheet);

(D/E #63, ¶38).

RESPONSE: This is in dispute as the screening happened later, at 11:50am. (Ex 16 Video file No.
30).

**REPLY:       Defendants do not understand Plaintiff's response to indicate a substantive
dispute of UMF #63. To the extent it is, Plaintiff has not cited any authority to support her
contention for what the officers references in UMF #30 should have done, in Plaintiff's
opinion. FRCP 56(e).**

64.      Around 2:30pm on December 1, 2015, Nurse Novak attended to Ms. Frazier and

advised Frazier would be due for her next treatment between 4:00pm and 4:30pm. (D/E #63,

¶40).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY:N/A**

67.      At about 3:50pm, Ms. Frazier appears to stop moving, although it is unclear from

the video footage. (Ex. 11, "196 H1").

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY:N/A**

68.     The coroner, Dr. Shiping Bao, concluded that Ms. Frazier died of diphenhydramine toxicity as a result of diphenhydramine misuse. (Ex. 13 – Coroner's Report).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

70.     It is undisputed that detainees and/or detainees incarcerated within a jail or prison setting will request medical attention for issues that are serious and mundane in nature. (Ex. 15 – Dep. of Schwartz, pp. 127-128); (Ex. 16 – Report of Eiser, pp. 22-23).

RESPONSE: Plaintiff does not dispute the facts alleged.

**REPLY: N/A**

### III.        DISPUTED MATERIAL FACTS – REPLY

5.        Correctional officers at the Jail routinely monitor the cells of all detainees within

booking are checked on every 15 minutes. (Ex. 2 – Dec. of Mathews, ¶6).

RESPONSE: It is not disputed that it is routine for cell checks to occur, however, the checks performed on Ms. Frazier were improper. Proper cell checks require observing "flesh and movement" which mandates that a correctional officer look into the cell to make sure that the detainee is moving and breathing. (Ex 3 - Schwartz Dep., pp 102-104; Ex 4 - Eiser Dep., pp 54-59).

**REPLY:         Disputed (insofar as Plaintiff's dispute UMF #5) and immaterial.**

**Immaterial because the adequacy of cell checks is not an issue in this case. Rather, Plaintiff appears to be bottomed on the alleged refusal to transfer Mrs. Frazier to a medical facility when she asked. (ECF #110, Correctional Defendant's Amended Answer, Count I, ¶ 62; Count III, ¶¶ 76, 79; Count IV, ¶¶ 84–86). A previous version of Plaintiff's Complaint alleged that a would-be defendant performed inadequate cell checks, (ECF #59, Count VI, ¶106), but this theory/party was dismissed with prejudice. (ECF #83). Moreover, what is material on the Plaintiff's claims is not what signs or symptoms of Mrs. Frazier's that Mathews could have learned given an adequate cell check (that would be a "negligence" standard), but rather what he was *actually aware of and consciously disregarded. See, e.g., Estate of Wells v. Bureau Cnty.*, 723 F. Supp. 1061, 1079–80 (C.D. Ill. 2010) (granting summary judgment for correctional officers who did not conduct cell checks for eight hours and forty five minutes, missing the decedent's suicide; various circumstantial evidence was insufficient to establish "actual, subjective knowledge" of a risk on the part of the defendant-officers).**

**Disputed, because Plaintiff's and Defendant's experts disagree as to whether a cell check "require[s]" observing "flesh and movement". (Plf's Ex. 4, Dep. of J. Eiser, at 54–56) (noting that cell check requirements vary by department, but the ultimate goal is to have officers respond to "anything unusual they see").**

7.        At no point during the night shift did Mathews know what medications Ms.

Frazier was on. (Ex. 2 – Dec. of Mathews, ¶10).

RESPONSE: This is disputed, the information regarding Ms. Frazier's medications was present in Ms. Frazier's jail records from this and prior detentions. Mathews also responded to an email from Officer Berkley which stated she was on medication for high blood pressure (Ex 5 CCS Medical Records, pp. 23, 33, 34, 52, 76; Ex 14 Initial Classification Listing; Ex. 15 Email from Sergeant Mathews)

**REPLY:** **Defendants agree Mathews responded to the email in question at 7:05am, but believe it is <u>undisputed</u> that Mathews was unaware of any medical needs/medications Mrs. Frazier had/was on until sometime between 6:30am–7:00am. (Ex. 2, Dec. of A. Mathews, ¶¶8, 10, 33–34). There is also no evidence that Defendant Mathews looked at Mrs. Frazier's "jail records" or had any awareness/recollection of her previous detentions.**

8.    Mathews had no idea that Ms. Frazier had contraband diphenhydramine on

her person, having learned this fact only after her demise. Ex. 2 – Dec. of Mathews, ¶11).

RESPONSE: This is disputed - correctional officers are required to conduct thorough searches for contraband. Had proper searches been performed, the diphenhydramine should have been discovered and removed from Ms. Frazier's possession.

**REPLY:** **Plaintiff has not adequately disputed UMF #8, and thus this Court should treat is as <u>undisputed</u> under FRCP 56(e).**

**First, Plaintiff does not cite any evidence for Plaintiff's claims about what "correctional officers" are required to do. FRCP 56(e).**

**Second, Plaintiff's "dispute" does not speak to Defendant Mathews' actual/subjective knowledge of Mrs. Frazier's contraband diphenhydramine, which is the focus of Fact no. 8. Instead, Plaintiff speculates that "correctional officers" (not Mathews) "should" have discovered the contraband (which does not sound like "deliberate indifference") and, if they had, they would have discovered the contraband and removed it from Mrs. Frazier's possession (which sounds a lot like speculation). Plaintiff has already agreed elsewhere that Mrs. Frazier had secreted the contraband from Jail staff, and took the pills themselves in secret. (ECF #142, Plft's Resp. to Fact no. 27).**

**Third, any issue relating to "searches" is not a part of this case. Plaintiff at one point tried to pursue this theory against a would-be defendant, (ECF #59, Count V), but this theory and would-be part were dismissed from this action with prejudice. (ECF #83).**

**Fourth (and relatedly): since "search" is not an issue in this litigation, it follows that Defendant Mathews cannot be liable under a "failure to search" theory on this Complaint or record. There is no allegation that Defendant Mathews failed to conduct a "search for contraband", (ECF #110, Counts I, IV), it is undisputed that Defendant Mathews was under no obligation to search Mrs. Frazier's cell during his shift, (Pltf's Ex. 3, Dep. of J. Schwartz, 100–101), and Mathews was not even working when Mrs. Frazier entered the Jail on November 30, 2015 (UMF #2), and therefore cannot be said to have any responsibility for any searches that did/did not occur at that time.**

11.    There are no medical professionals on site at the Jail during Sergeant

Mathews' night shift. (Ex. 2 – Dec. of Mathews, ¶3).

RESPONSE: This is disputed, there was an on-call doctor that could have been called for guidance. Also correctional officers are trained in first aid, to notice withdrawal symptoms, and to take vitals (Ex. 6 - First Aid & CPR Cert; Ex. 7- Mathews Champaign Co Course Training '04 - '08; Ex. 8 – Champaign Co. Medical Training Course Slides pp. 105-109) and yet, no vitals were taken. If they were not going to properly assess her, then she should have been sent out for a medical evaluation.

**REPLY:       Defendants do not believe Fact no. 11 is adequately disputed, and therefore should be treated as <u>undisputed</u>. FRCP 56(e)(2).**

**First, Plaintiff does not challenge the core of Fact no. 11: there are no medical professionals "on site" at the Jail during Mathews' shift. Thus, Fact no. 11 is actually undisputed.**

**Second, Plaintiff introduces some Additional Facts – namely, that correctional officers receive some medical instruction as part of their training (<u>undisputed, immaterial</u>) and that there was an on-call doctor who could have been called for guidance (which Plaintiff did not cite evidence for, and therefore should be disregarded under FRCP 56(e)).**

**Third, the last sentence of Plaintiff's response ("If they were not going to properly assess her . . . .") is a legal conclusion, and thus does not need to be responded to.**


13.    CCSJ's "Initial Classification Listing" notes that Ms. Frazier reported, among

other things, being a heroin user, having high blood pressure, and having a left knee injury.

(Ex. 5).

RESPONSE: This is disputed as it is contradicted by an earlier statement that Sergeant Mathews didn't know about Ms. Frazier's medical condition. He also knew she was on medical watch and knew that information regarding her condition was readily available to him.


**REPLY: Defendants do not quite understand what is being "disputed" here. Plaintiffs do not appear to contradict what Fact no. 13 actually says (i.e., that the "Initial Classification Listing" says certain things), and Fact no. 13 should therefore be treated as <u>undisputed</u>.**

**Defendants are also unsure how Plaintiff believes an "earlier statement that Sergeant Mathews didn't know about Ms. Frazier's medical condition" contradicts Fact no. 13. There is no evidence that Mathews looked at the "Initial Classification Listing", for example, and he is not the officer who completed the form, and was not working when it was completed at 9:50am on November 30, 2015. (Ex. 5, p.3); (UMF #2).**

**Furthermore, whether Mathews knew Mrs. Frazier was on "medical watch" is <u>immaterial</u>, as the record shows that Mathews was not subjectively/actually aware of any medical**

need beyond Mrs. Frazier's knee brace roughly 6:45am on December 1, 2015. (See Def's Reply to Fact no. 7, *supra*).

Finally, it is <u>immaterial</u> whether or not Mathews had "information regarding [Mrs. Frazier's] condition readily available to him", as Plaintiff's claim is necessarily focused on what Mathews *actually* knew, not what he *could* have known. *See, e.g.*, *Estate of Wells v. Bureau Cnty.*, 723 F. Supp. 1061, 1079–80 (C.D. Ill. 2010) (granting summary judgment for correctional officers were unaware of inmate's risk of suicide, despite Jail records that they could have looked at documenting the same; various circumstantial evidence was insufficient to establish "actual, subjective knowledge" of a risk on the part of the defendant-officers).

25.    When Mathews started his shift, he did not recall being alerted to any medical conditions for Ms. Frazier save for the fact Ms. Frazier had a knee brace, and used a cane. (Ex. 2 – Dec. of Mathews, ¶8).

RESPONSE: This is disputed as it was in her file that she was on medical watch, therefore he knew this information was readily available. The initial classification listing indicated to watch for withdrawal, high blood pressure, knee injury, prior stroke, and heroin.

REPLY:    Plaintiff does not adequately dispute Fact no. 25, and therefore this should be treated as <u>undisputed</u>. FRCP 56(e)(2).

Plaintiff does not present evidence suggesting what Mathews actually/subjectively knew about Mrs. Frazier's medical condition. Contrary to Plaintiff's claim, there is no evidence that Defendant Mathews reviewed Mrs. Frazier's initial classification listing. Instead, Plaintiff says Mathews *could* have learned more from certain records. This is not the relevant standard for deliberate indifference. *(See Def's Reply to Fact no. 13, supra, on this point)*. Thus, Plaintiff has not disputed Fact no. 25 with competent, material evidence, and Fact no. 25 should be deemed <u>undisputed</u> by this Court.

31.[A]    Mathews does not recall Ms. Frazier verbalizing any concerns alongside her groaning – although he knew she could speak. (Ex. 2 – Dec. of Mathews, ¶19).

RESPONSE: Plaintiff disputes the facts alleged. Fellow detainees told investigators that Ms. Frazier informed correctional officers that her stomach hurt due to withdrawal symptoms. Mathews also mentions in his statement that, early in his shift, she told him her stomach hurt

due to withdrawal symptoms. (Ex. 9 ISP Interview of Benjamin Davis; Ex. 10 ISP Interview of Shawn Schoonover; Defendants' Ex 2. Dec. of Mathews ¶ 36, Dkt. 137-3)

**REPLY:     Plaintiff has not disputed Fact no. 31[A] with competent evidence; therefore, the same should be treated as undisputed. FRCP 56(e). Given that Plaintiff uses the cited sources of information repeatedly throughout her Responses, a lengthier discussion is warranted. Defendants will refer back to this discussion to save space in future Replies.**

**Preliminarily, Plaintiff does not seem to "dispute" Fact no. 31[A], which speaks to a specific moment in time in the sequence of facts (i.e., when Mrs. Frazier first started moaning between 2:30am and 3am on November 30, 2015). To counter this, Plaintiff says "Ms. Frazier informed correctional officers that her stomach hurt due to withdrawal symptoms". To the extent Plaintiff is referencing the 6:45am communication between Mathews and Mrs. Frazier, Defendants agree that Mrs. Frazier vocalized her heroin-related stomach pain at that time. (*See* UMF nos. 49, 50, 52). The evidence Plaintiff cites does not establish that Defendant Mathews was aware Mrs. Frazier's reported heroin-related stomach pain before this time.**

**Moreover, Plaintiff's cited evidence is either incompetent or a misreading of Mathews' declaration.**

**First, Plaintiff cites to non-verbatim summaries of unsworn police interviews of two individuals (Benjamin Davis; Shawn Schoonover) who were also in the Jail when Ms. Frazier was. (Plft's Resp. to UMF nos. 31[A], 31[B], 32, 33, 42, 47, and 48). But these summaries (and those like them) are inadmissible hearsay-within-hearsay, as noted by other courts within the Seventh Circuit. FRE 801–804; *see, e.g., Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 424 n.4 (7th Cir. 2017); *Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) ("[Plaintiff] attempted to inject additional facts into the case in the form of unsworn written summaries prepared by investigators from unsworn statements made by other prisoners housed on [Plaintiff's] cell block as the time of his suicide. These prisoner interviews were apparently taken in the course of an internal prison investigation following [Plaintiff's] death. The district court did not consider the content of these statements in its summary judgment decision, and we conclude that this was proper. The prisoner's unsworn statements do not satisfy the requirements of [Federal Rule] 56(e)[.]"); *see also Demouchette v. Dart*, 2015 U.S. Dist. LEXIS 18582, at *13–14 (N.D. Ill. 2015) (rejecting investigation reports "describing 'in summary but not verbatim'" statements from decedent inmate's cellmate). Thus, the statements of Mr. Davis and Ms. Schoonover to the Illinois State Police Investigators are incompetent evidence, and must be disregarded by this Court.**

**Second, Plaintiff cites a misreading of paragraph 36 of Mathews' declaration. Plaintiff claims ¶ 36 was an admission that Ms. Frazier told Mathews "earlier in his shift" that she was experiencing heroin withdrawal. (Plft's Resp. to UMF #s 31, 31 (sic), 32, 33, 42, 47, and 48.) In context, paragraph 36 states says that Mathews, having just learned that Mrs. Frazier's stomach pain was due to heroin withdrawal, noted that "[a]s with earlier in my**

**shift, Ms. Frazier did not present any signs or symptoms of medical distress that I could identify – aside from the complaint of withdrawal-based stomach pain." (Ex. 2, Decl. of A. Mathews, ¶36). What paragraph 36 clearly is communicating is that (1) Ms. Frazier's presentation was the same as "earlier in his shift" (2) save for the fact Mrs. Frazier had just complained of withdrawal-based stomach pains. This reading is supported by the rest of Mathews' declaration, which repeatedly emphasizes that Frazier never told him what was wrong until "finally, at some point in between 6:30am and 7:00am, Ms. Frazier told me her stomach hurt due to heroin withdrawal". (Ex. 2, Decl. of A. Mathews, ¶¶ 18, 20, 26, 33). So contrary to Plaintiff's misreading, paragraph 36 cannot be credibly read as "Mathews also admit[ting] that Ms. Frazier told him she had stomach pain due to withdrawal at both the beginning and end of his shift". (See, e.g., Plf's Res. to UMF #31[A]). The fact Plaintiff is stretching this testimony from Mathews in such way is indicative of the fact Plaintiff does not have the evidence she needs to defeat summary judgment.**

 

31. [B]        At that time (sometime between roughly 2:30am and 3:00am), Ms.

Frazier never told Mathews or the other officers why she was moaning or what was wrong with

her. (Ex. 2 – Dec. of Mathews, ¶¶18, 20).

RESPONSE: This is disputed by detainee testimony, video evidence, and Mathews' statement. (Ex. 9 - ISP Interview of Davis; Ex. 10 - ISP Interview of Shoonover; Ex 16 a. Video files of Frazier using toilet; Ex 16 b. Video files of Frazier vomiting; Ex 16 c. Video files of Frazier's seizures; Defendant Ex. 2 Dec. of Mathews ¶ 36, Dkt. 137-3).

**REPLY:        Plaintiff does not adequately dispute Fact no. 31[B], and therefore it should be treated as <u>undisputed</u>. FRCP 56(e)(2).**

**With regards to Plaintiff's cited "detainee testimony" and "Mathews' statement", these are incompetent evidence for reasons discussed in Defendants' Reply to Fact no. 31[A].**

**As for the video evidence: first, none of the cited video takes place during the time sequence Fact no. 31[B] is in (i.e., when Mrs. Frazier was moaning between 2:30am and 3:00am). Second, the Jail's security footage does not show Mrs. Frazier actually vomiting. Instead, it captures her standing and/or bending in front of the toilet – no vomitus can be made out in the video. Thus, it's speculation to guess on what occasions Plaintiff cites (if any) that Plaintiff actually vomited. More importantly, there is also no evidence that Defendant Mathews was aware of any occasion where Mrs. Frazier vomited.**

**Same goes for the "seizures" Plaintiff claims the video depicts. First, there is no medical testimony in this case establishing that the instances Plaintiff cites are "seizures". Second, Mrs. Frazier visually appears to do nothing more than toss/turn/stretch in her sleep at the cited times. Third, there is no evidence establishing that Defendant Mathews was aware of these "seizures" during his shift.**

**In sum, Plaintiff has not provided any evidence contradicting Mathews' statement that Mrs. Frazier did not communicate to *him* or any of his staff what was wrong with her. This fact should therefore be treated as undisputed.**

32.     When Mathews saw Ms. Frazier during this time frame, Ms. Frazier did not appear to be in any medical distress: she was breathing normally, had no visible wounds or injuries, no visible vomit, and was able to communicate. (Ex. 2 – Dec. of Mathews, ¶19); (Ex 11, "119 H4" to "126 H1").

RESPONSE: This is disputed by surveillance video footage showing Ms. Frazier's extreme distress. She was seen vomiting several times (Ex. 16 b.) and constantly going to toilet on camera in cell H1 (Ex. 16 a.). Sergeant Mathews was at the desk throughout the night with video surveillance directly in front of him. (Ex. 16 c. Video file No. 5). He also conducted cell checks and he helped move her mat away from the door at least once during the overnight shift.

**REPLY: Plaintiff does not adequately dispute Fact no. 31[B], and therefore it should be treated as <u>undisputed</u>. FRCP 56(e)(2).**

**Regarding the video footage: the vomiting was already discussed in Defendants' Reply to Fact no. 31[B], and the "constantly going to the toilet" video evidence suffers the same defects – i.e., it is impossible to determine what, if anything, Mrs. Frazier is actually using the toilet for.**

**As for Plaintiff's claim that "Mathews was at the desk throughout the night with video surveillance directly in front of him": counsel is unable to identify the video Plaintiff is citing, and so cannot comment much other than to say this – there is no competent evidence establishing who Mathews is in the video, where he is at the time Plaintiff is citing, whether the security footage for Mrs. Frazier's cell was specifically open "at the desk", and whether Mathews (or whomever is at "the desk") was actually looking at the security footage. Plaintiff therefore does not competently establish any personal knowledge on the part of Mathews, and thus fails to adequately dispute Fact no. 31[B], which captures what Mathews' personal knowledge.**

33.     After Ms. Frazier's moans continued, and she continued to decline to inform Mathews and the other officers of what issue she was experiencing, Mathews had Ms. Frazier relocated from cell H4 to H1 (also in booking). (Ex. 2 – Dec. of Mathews, ¶20).

RESPONSE: This is in dispute as, according to witnesses Benjamin Davis and Shawn Schoonover, Ms. Frazier was voicing her concerns and expressing that she was in pain to the correctional officers. Mathews also admits that Ms. Frazier told him she had stomach pain due to withdrawal at both the beginning and end of his shift. (Ex. 9 - ISP Statement of Davis; Ex. 10 - ISP Statements of Shoonover; Defendant's Ex. 2 Dec. of Mathews ¶ 36 Dkt. 137-3).

**REPLY:  This fact is not disputed by competent evidence, as discussed in Defendant's Reply to Fact no. 31[A]. Therefore, this fact should be deemed <u>undisputed</u>.**

34.    Mathews' decision to relocate Ms. Frazier was motivated by the fact that Ms. Frazier may be more comfortable in her own cell, her new cell could still be easily monitored by correctional officers, and may reduce her ability to disturb the detainees at the Jail. (Ex. 2 – Dec. of Mathews, ¶21).

RESPONSE: This is disputed as there exists no evidence to support this statement. The cell she was moved into was further away from the booking counter where officers would have had a direct view of the cell.

**REPLY:        Plaintiff has not adequately disputed Fact no. 34, and therefore the same should be deemed <u>undisputed</u>. FRCP 56(e)(2).**

**First, Fact no. 34 is supported by sworn testimony of a witness with personal knowledge – thus, the statement itself is competent evidence. FRE 601–603.**

**Second, Fact no. 34 says Mrs. Frazier's new cell could "*still* be easily monitored by correctional officers" (emphasis added). Fact no. 34 does not say Mrs. Frazier would be *as* easy to monitor, or *more* easily monitored. Instead, Fact no. 34 says Mathews believed Mrs. Frazier could be moved (and the identified benefits obtained) and it would *still* be easy to monitor her. Plaintiff's contention that the cell was "further away", therefore, does not contradict anything Fact no. 34 establishes.**

37.    There is no evidence that Ms. Frazier indicated any distress (medical or otherwise) from 2:50am until about 4:40am. (Ex. 11, "124 H1" to "142 H1").

RESPONSE: This is disputed as video surveillance footage of cell H1 shows she experienced vomiting, diarrhea, seizures, stomach aches, and restlessness on December 1, 2015. (Ex. 16 Video 1.1, Ex. 16 a. Video files of Frazier using toilet, 16 b. Video files of Frazier vomiting, c. Video files of Frazier's seizures).

**REPLY:** **Without reiterating Defendants' challenges to Plaintiff's video evidence (*see* Reply to Facts nos. 31[B], 32), and setting aside that Plaintiff has not established that Mrs. Frazier was actually experiencing any of the conditions she cites, Defendants will allow the video to speak for themselves. Moreover, none of the video establishes that Defendant Mathews possessed actual/subjective knowledge of any medical distress during the timeframe at issue in Fact no. 37.**

41.     At roughly 4:40am, Ms. Frazier briefly started knocking on her door with her hand

before laying down on her sleeping mat and kicking her cell door. (Ex. 11, "142 H1"); (Ex. 2 –

Mathews Dec. ¶¶23-24).

RESPONSE: This is in dispute as video surveillance shows Ms. Frazier had knocked on the door throughout the night. (Ex. 16 Video files)

**REPLY:** **Counsel has not identified video responsive to what Plaintiff is claiming, and therefore will allow the video to speak for itself. Furthermore, there is no competent evidence establishing that Mathews was subjective/actually aware Mrs. Frazier knocking on the door "throughout the night".**

42. [A]     Ms. Frazier would go on to sporadically kick her cell door at various points

between 4:40am and 6:10am. (Ex. 11, "142 H1" to "143 H1"; "147 H1" to "148 H1").

RESPONSE: This is in dispute as it drastically alters the statement of facts – her distress began around 2:54am and continued until she died. (Ex. 16 Video files)

**REPLY:** **Plaintiff has not adequately disputed Fact no. 42[A], and therefore the same should be treated as <u>undisputed</u>.**

**First, Plaintiff does not dispute the substance of Fact no. 42[A] – namely, that Ms. Frazier would sporadically kick her door between 4:40am and 6:10am. Thus, this is actually not in dispute.**

**Second, Plaintiff does not explain what she means by "distress" in her Response. Setting aside how speculative that claim is without supporting testimony, looking at the video of the time Plaintiff cited, Mrs. Frazier appears to be intermittently tossing/turning in her sleep. It is unclear why this would be a distinctly unusual symptom that would start the clock on Plaintiff's identified period of an unspecified "distress".**

42.[B]   Each time they responded and investigated Ms. Frazier's condition, she would

decline their invitations to tell them what her problem was. (Ex. 2 – Dec. of Mathews, ¶26).

RESPONSE: This is in dispute because an investigation was conducted and witnesses claim otherwise. Video shows that there were no attempts to check on her or take vitals. – Instead, appearing to act with contempt, they would simply drag her across the floor and leave. (Ex. 16 d. Video 8- 4:45am, 9- 4:53am, and 13- 5:27am).

**REPLY:        Plaintiff does not adequately dispute Fact no. 42, and therefore it should be deemed <u>undisputed</u>.**

**First, Plaintiff cites no evidence to support her statement that "witnesses claimed otherwise". FRCP 56(e). Assuming Plaintiff is referring to co-detainee statements, these are (1) incompetent evidence, as hearsay-within-hearsay and (2) do not say what Plaintiff claims they do. (*See* Defendants' Reply to Fact no. 31[A], *supra*).**

**Second, the videos do show correctional officers repeatedly "check[ing]" on Mrs. Frazier during this period of time, buttressing Defendant Mathews' testimony. (Ex. 11, "142 H1" at 0442, 0444, 0445; "143 H1" at 0453; "145 H1" at 0511; "147 H1" at 0525, 0527; "150 H1" at 0630, 0640, 0645).**

**Third, there is no evidence supporting Plaintiff's "appearing to act with contempt" statement. To the contrary, Defendant Mathews has articulated why Mrs. Frazier was moved, and there is no contradictory evidence. *See* Fact no. 45, *infra*.**

**Defendants acknowledge that Mrs. Frazier's vitals were never taken, but this is <u>immaterial</u> as Defendant Mathews and the other officers in booking possessed no actual/subjective knowledge suggesting vitals even had to be taken, and deliberate indifference cannot be predicated on information that could have obtained, but was not.**

43.     Ms. Frazier's physical presentation had not changed since the first time Mathews

saw her earlier in his shift: there were still no signs or symptoms he could identify that would

indicate that Ms. Frazier was in medical distress, and she was able to communicate. (Ex. 2 – Dec.

of Mathews, ¶27).

RESPONSE: This is in dispute as there is ample evidence of evident medical distress if one pays attention to the footage from cell H1 (Ex. 16 Video files).

**REPLY:        Plaintiff has not adequately disputed Defendant Mathews' knowledge of Mrs. Frazier's condition, and therefore Fact no. 43 should be deemed <u>undisputed</u>. FRCP**

**56(e)(2). Defendants incorporate-by-reference its comments/objections to the security video, and what Plaintiff claims can be gleamed from them. (*See* Reply to Fact nos. 31[B], 32, 37, *supra*).**

45.     Mathews' decision to move Ms. Frazier away from her door was motivated by the fact that Ms. Frazier may hurt herself if she kept kicking (given her knee brace and use of a cane), she did not present any signs of medical distress that he could identify, her kicks were disturbing other detainees, and Ms. Frazier would still be monitored by correctional staff such that kicks were not necessary to draw their attention to her. (Ex. 2 – Dec. of Mathews, ¶29).

RESPONSE: This is disputed because Defendant Mathews did not look for distress. Her distress was present if one was looking for it as documented by video surveillance on the camera in cell H1 (Ex. 16 Video files).

**REPLY:        Plaintiff does not adequately dispute Fact no. 45, and therefore the same should be deemed <u>undisputed</u> by this Court. FRCP 56(e)(2).**

**First, Plaintiff does not challenge the substance of Fact no. 45 – i.e., Mathews' reasons for having Mrs. Frazier moved away from the door, that Mathews was not subjectively/actually aware of any signs of urgent medical destress, and that Mrs. Frazier could still be monitored by officers without her kicking the door. Thus, these facts are undisputed.**

**Instead, Plaintiff charges that Mathews "did not look for distress", and cites as supporting evidence all of the Jail's security footage with no testimony establishing that Mathews watched any of this footage on the night in question, or was subjectively/actually aware of any sign/symptoms Plaintiff claims the video portrays. Defendants reiterate their objections to Plaintiff's use of the video footage in this way (*see* Reply to Facts nos. 31[B], 32, 37, *supra*), and reemphasize the lack of competent testimony establishing Mathews' subjective/actual awareness of any urgent medical condition Mrs. Frazier may or may not have had.**

47.     At some point after Ms. Frazier had been kicking her door, Ms. Frazier finally told Mathews (three times) that her stomach hurt. Mathews does not recall when the first two times

were, but does know the third and final time was when she also mentioned "heroin" to him. (Ex.

2, Dec. of Mathews, ¶31).


RESPONSE: This is in dispute as other witnesses state that they heard her tell Mathews that her stomach hurt due to withdrawal. Sergeant Mathews himself stated she told him her stomach hurt due to withdrawal at the beginning of his shift. Further, there is ample video evidence of her pain and attempts to obtain help on video on the camera in cell H1 (Ex. 16 Video files).

**REPLY:        Plaintiff has not adequately disputed Fact no. 47 with competent evidence, and therefore Fact no. 47 should be deemed <u>undisputed</u> by this Court.**

**Regarding the statements of "other witnesses": Plaintiff does not cite to these witnesses' testimony, FRCP 56(e). Assuming these "witnesses" are the co-detainee statements Plaintiff has previously cited, Defendants reiterate that such statements are (1) inadmissible hearsay-within-hearsay, and (2) do not actually dispute any fact relating to Defendant Mathews' subjective/actual awareness of Mrs. Frazier's condition. (*See* Reply to Fact no. 31[A], *supra*).**

**Regarding what "Mathews himself stated": there is no dispute that Mrs. Frazier told Mathews she believed she was going through withdrawal around 6:45am on December 1, 2015. (UMF nos. 49, 50, 52). Plaintiff does not provide any evidence suggesting anything to the contrary. FRCP 56(e).**

**Regarding the video: Defendants reiterate their objections to Plaintiff's use of the video footage in this way (*see* Reply to Facts nos. 31[B], 32, 37, *supra*), and reemphasize the lack of competent testimony establishing Mathews' subjective/actual awareness of any urgent medical condition Mrs. Frazier may or may not have had.**

48.        For the first two times Ms. Frazier mentioned that her stomach hurt, Ms. Frazier

did not initially tell Mathews why her stomach hurt when he asked her. (Ex. 2 – Dec. of

Mathews, ¶32).


RESPONSE: This is in dispute as she told Defendant Mathews at the beginning of his shift and he knew or should have known that she was suffering from withdrawal due to his annual training. (Ex.7 Mathews Training Courses '04-'08)

**REPLY:        Plaintiff has not adequately disputed Fact no. 48 with competent evidence, and therefore Fact no. 48 should be deemed <u>undisputed</u> by this Court.**

**Plaintiff provides no evidence establishing that Mrs. Frazier "told Defendant Mathews" about why her stomach hurt at the beginning of his shift. FRCP 56(e). Without any supporting evidence, Plaintiff does not address Fact. No. 48 in any meaningful way. Even**

if Plaintiff cited the "evidence" she cited for this proposition in Fact no. 31[A] – namely, a misreading of paragraph 36 of Mathews' Declaration – then Defendants reincorporate its objections to such evidence here. (*See* Reply to Fact no. 31[A]).

Plaintiff includes an "Additional Material Fact" (indeed, Plaintiff's AMF no. 71) that is not responsive to Fact no. 48. Defendants will address AMF no. 71 *infra*.

Finally, Plaintiff claims Mathews "knew or should have known" that Mrs. Frazier was suffering from withdrawal. This is a legal conclusion, not a fact, and therefore does not need a response. To the extent a response is necessary, Defendants dispute that Mathews "knew or should have known" Mrs. Frazier was going through heroin withdrawal, and further point out that "should have known" is the standard for negligence, not deliberate indifference/willful & wanton misconduct.

51.   As with earlier in Mathews' shift, Ms. Frazier did not present any signs or symptoms of medical distress that Mathews could identify – aside from the complaint of withdrawal-induced stomach pain. (Ex. 2 – Dec. of Mathews, ¶36).

RESPONSE: This is disputed as her symptoms were "classic" withdrawal symptoms – vomiting, diarrhea, restlessness, seizures, and stomach pain as seen on the camera in cell H1 at 2:54am, 3:04am, 3:08am, 3:20am, 3:33am, 3:36am, 3:37am, 3:39am, 3:55am, 4:13am, 4:20am, 4:31am, and 4:38am. (Ex. 11 Zegar Dep p. 33, Ex. 16 Video files).

REPLY:   Plaintiff has not adequately disputed Fact no. 51 with competent evidence, and therefore Fact no. 51 should be deemed undisputed by this Court.

Placed in context, Fact no. 51 establishes that Mathews did not subjectively/actually identify any physically-manifest signs of medical distress for Mrs. Frazier when he was talking with her at 6:45am on December 1, 2015. (*See* Facts 49–52). To counter this, Plaintiff quotes co-defendant's nursing expert for the signs/symptoms of heroin withdrawal, and points to various timestamps in the video where Plaintiff believes these symptoms manifested. (Note: Defendants reincorporate their challenges to Plaintiff's attempted use of the video, *see* Reply to Facts nos. 31[B], 32, 37). Plaintiff does not establish, however, that Defendant Mathews was actually/subjectively aware of any of these symptoms (assuming *arguendo* that they were, indeed, symptoms). Moreover, the timestamps Plaintiff refers to fall outside of this 6:45am conversation between Frazier and Mathews, which Fact no. 51 focuses on, and therefore do not respond to this Fact. Thus, Plaintiff does not dispute Fact no. 51 with competent and/or relevant evidence. FRCP 56(e)(2).

61.     There is no evidence that Ms. Frazier presented any signs or symptoms of

medical distress for the remainder of Mathews' shift. (Ex. 11, "151 H1" to "200 H1"); (D/D #134.

UMF #13, 15, 18-20, 32).

RESPONSE: This is in dispute as it is apparent on video that Ms. Frazier is still lethargic and using the bathroom frequently.

**REPLY:       Plaintiff has not adequately disputed Fact no. 61 with competent evidence, and therefore Fact no. 61 should be deemed <u>undisputed</u> by this Court. Plaintiff has not provided any evidence establishing that Mrs. Frazier's purported lethargy and "frequent" bathroom use constitute "medical distress", or that Defendant Mathews was subjectively/actually aware of the same. FRCP 56(e)(2).**

62.     At some point on December 1, 2015 Nurse Cecile Kemp contacted the on-call

physician about Ms. Frazier's Heroin withdrawal symptoms. (D/E #63, ¶39).

RESPONSE: It is disputed that Nurse Kemp contacted the on-call doctor. It was Nurse Novak who contacted the doctor. Also, Ms. Frazier's debilitating symptoms required medical attention in the early morning hours of December 1, 2015. Plaintiff asserts that Mathews should have called the on-call doctor hours earlier.

**REPLY:       With regards to Plaintiff's first sentence: Whether Kemp or Novak called the doctor is <u>immaterial</u>, as the key point is that a doctor was called.**

**With regards to Plaintiff's second sentence: this is a legal conclusion/argument, not a fact, and thus does not require a response. Out of a surplus of caution, Plaintiff cites no evidence of Mrs. Frazier's "debilitating symptoms", any expert testimony establishing that these symptoms "required medical attention", and provides no evidence suggesting Mathews was actually/subjectively aware of the same.**

64.     Specifically, these symptoms were a "2" for "GI Upset" (which meant the

patient had "nausea or loose stool" within the last half-hour), and a "5" for "Restlessness"

(which meant that during the nurse's assessment, Ms. Frazier was "unable to sit still for more

than a few seconds"). (Ex. 9 – COWS Sheet).

RESPONSE: This is in dispute as it portrays an inaccurate picture of her withdrawal symptoms – the nurses testified that symptoms get better over time and so her symptoms were much worse overnight. (Ex 12 – Feather Dep., pp 151-152).

**REPLY:       Plaintiff has not adequately disputed Fact no. 64 with competent evidence, and therefore Fact no. 64 should be deemed <u>undisputed</u> by this Court. Fact no. 64 focuses on the withdrawal symptoms that were assessed by the Jail's nurses on December 1, 2015. Plaintiff does not appear to be disputing this, and thus Fact no. 64 is not "actually" disputed.**

65.    At no point during their interactions with Ms. Frazier on December 1, 2015 did

the Jail's medical professionals believe Ms. Frazier was suffering a medical emergency or

needed to be sent to a hospital. (D/E #134, UMF #13, 15, 18-20, 32).

RESPONSE: This is in dispute because the medical staff were not present during the height of Ms. Frazier's withdrawal symptoms. Correctional officers who were to assess and protect Ms. Frazier failed to take vitals or observe her through the night. The correctional officers acted as gatekeepers, preventing Ms. Frazier from obtaining care. Nurse Kemp, the first medical personnel to see Ms. Frazier, recognized she was in withdrawal but the care provided was insufficient by the time it was finally reduced.

**REPLY:       Plaintiff has not adequately disputed Fact no. 65 with competent evidence, and therefore Fact no. 65 should be deemed <u>undisputed</u> by this Court.**

**First: Plaintiff does not challenge the factual substance of Fact no. 65, and therefore this is not "actually" disputed.**

**Second: the remainder if Plaintiff's Response is essentially a restatement of Plaintiff's theory-of-the-case, and thus is pure legal argument that is unsupported by factual or legal citation. A factual Reply is therefore not required. To the extent a Reply is found warranted, Defendants dispute Plaintiff's legal conclusion, for reasons already articulated at length in Defendants' Replies to Plaintiff's other Responses, *supra*.**

66.    At about 3:30pm, Ms. Frazier can be seen putting what appear to be pills

into her mouth. There is nobody in the cell with her, and these pills appear to come from

her bag of personal belongings. (Ex. 11, "194 H1").

RESPONSE: This is in dispute because the timestamp says 3:23pm.

**REPLY:       Whether Plaintiff prefers "[a]t about 3:30pm" or "3:23pm" is <u>immaterial</u>. Plaintiff does not appear to dispute the remainder of Fact no. 66, and therefore these should be treated as <u>undisputed</u>.**

69.    The coroner report for Ms. Frazier lists her time of death as 5:46pm on

December 1, 2015. (Ex. 13 – Coroner Report).

RESPONSE: This is in dispute as Ms. Frazier may have died earlier – no personnel entered her cell to check on her until she was discovered unresponsive. Her final movement was at 3:50pm (Ex. 16 c. Video 32).

**REPLY:        Plaintiff does not appear to be challenging that the coroner's report says what it says, and therefore Fact no. 69 is not "actually" disputed.**

**To the extent Plaintiff includes an "Additional Material Fact" by claiming Mrs. Frazier "could" have died earlier, Plaintiff provides no evidence establishing that fact beyond Plaintiff's own speculation. FRECP 56(e). Regardless, for purposes of the instant Motion Ms. Frazier's time of death is only material insofar as it occurred *after* Defendant Mathews' shift had concluded, and he had left the Jail. Plaintiff does not appear to dispute this.**

## IV.    ADDITIONAL MATERIAL FACTS – REPLY

71.    Mathews received almost annual training regarding withdrawal, potential death from withdrawal, and when staff should call the on call doctor immediately (when in doubt or when there is a change in condition). (Ex. 7 – Mathews Training Courses '04-'08; Ex. 8 pp. 105-109).

**REPLY:** **Undisputed** and **material.**

72.    Mathews was previously written up for making disparaging comments toward detainees with addictions. (Ex. 13- Sergeant Mathews Violation)

**REPLY:**    **Undisputed** and **immaterial.** **As Plaintiff's exhibit 13 shows, Mathews was written up in 2008 for making a comment about drug-addicted detainees. It is worth noting that (1) Mathews was *punished* for this behavior, (2) the violation does not suggest Mathews' comment somehow kept him from providing addicted detainees access to their healthcare, and (3) the violation occurred nearly 7 ½ years before the subject incident. There is also no evidence that Mathews made any other disparaging remarks toward any detainees after the 2008 incident.**

73.    Ms. Frazier had had seizures when previously detained at the Champaign County Satellite Jail and jail staff sent Ms. Frazier to the hospital for treatment. (Ex. 5-CCS Medical Records p.42)

**REPLY:**    **Undisputed** and **immaterial** **as to Defendant Mathews, as there is no evidence that Defendant Mathews was involved in Mrs. Frazier's previous detention, or was aware of the same. Thus, this is not a basis of information upon which Defendant Mathews could be deliberately indifferent/willful and wanton.**

**Undisputed** and **material** **as to Defendant Champaign County for Plaintiff's ADA claim.**

74.    On previous detentions Ms. Frazier had smuggled drugs into Champaign County Satellite Jail to self-medicate through withdrawal. (Ex. 5- CCS Medical Records p. 36)

**REPLY:**    **For both Defendants: Undisputed** **that Mrs. Frazier previously had smuggled drugs into the subject Jail. Defendants dispute, however, Mrs. Frazier's motivation for**

smuggling in the drugs (i.e., "to self-medicate"), as Plaintiff has provided no evidence speaking to Mrs. Frazier's rationale.

**For Defendant Mathews: <u>immaterial</u>,** as there is no evidence that Defendant Mathews was involved in Mrs. Frazier's previous detention, or was aware of the same. Thus, this is not a basis of information upon which Defendant Mathews could be deliberately indifferent/willful and wanton.

**For Defendant Champaign County: <u>immaterial</u>,** as the fact Mrs. Frazier previously smuggled contraband into the Jail does not speak to whether or not the *Jail's* conduct on November 30 and December 1, 2015 constituted discrimination on the basis of a disability.

75.     Throughout the night, Ms. Frazier can be seen begging the correctional officers for help on the camera in cell H1 (Ex. 16 Video files).

**REPLY:        Add'l Material Fact no. 75 is not supported by competent evidence, and therefore should be disregarded. FRCP 56(e)(2).**

**First, the videos Plaintiff cites do not contain audio, so it is speculation to say what (if anything) Mrs. Frazier is saying based on the video alone.**
**Second, Plaintiff does not cite any testimony establishing that Mrs. Frazier is "begging the correctional officers for help" in AMF no. 75. Moreover, Plaintiff does not have the evidence she needs to establish such a fact. (*See* Def's Reply to Fact no. 31[A]).**

**Third, Plaintiff does not establish that Defendant Mathews or any correctional officer heard Mrs. Frazier's purported "begging". Instead, the evidence shows that Mrs. Frazier moaned/groaned, correctional officers responded, but Mrs. Frazier did not tell anybody what her medical issue was until roughly 6:45am. (*See, e.g.*, Facts nos. 28–33, 43, 49–52).**

76.     Fellow detainees at the Jail have attested to the fact that Ms. Frazier was begging for medical attention all night. (Ex. 9 ISP Statement of Davis; Ex. 10 ISP Statements of Shawn Schoonover).

**REPLY:        AMF no. 76 is not supported by competent evidence. FRCP 56(e); (*See* Def's Reply to Fact no. 31[A]).**

77.     Ms. Frazier can be seen on surveillance video vomiting five times between 3:04am and 4:57am. (Ex. 16 b. Video 2, 3, 7.1, 10, 11).

**REPLY:** **AMF no. 77 is not supported by competent evidence. FRCP 56(e); (See Def's Reply to Facts nos. 31[B], 32, 37).**

78. Ms. Frazier can be seen on surveillance video using the toilet for either urination or diarrhea twenty-five times (Ex. 16 a. Video files of Frazier using the toilet).

**REPLY:** **AMF no. 77 is not supported by competent evidence. FRCP 56(e); (See Def's Reply to Facts nos. 31[B], 32, 37).**

79. At 3:37am, correctional officer Ashleigh Warren performs a cell check, and video documentation shows that at that time Ms. Frazier is actively having a seizure. Correctional officer Warren does not document the seizure or provide any care for Ms. Frazier. Mathews is at the desk supervising Warren and was or should have been aware that Warren did not properly check Ms. Frazier. The failure of Mathews and Warren to even notice Ms. Frazier's seizure shows deliberate indifference. (Ex. 16 c. Video 5 (3:37:40)).

**REPLY:** <u>**Disputed**</u> **and** <u>**immaterial**</u>**.**

<u>**Disputed**</u> **that Plaintiff has provided any evidence (beyond her say so) that Mrs. Frazier is experiencing a "seizure" at the time provided. There is no medical testimony speaking to what Mrs. Frazier was or was not experiencing at the time mentioned in AMF no. 79. Also disputed that there is any evidence that Officer Warren (assuming *arguendo* it is her in the video) saw Mrs. Frazier's "seizure".**

**There is no evidence establishing who any individual "at the desk" is, making a conclusion on that person's identify speculative. It is also speculative that anyone in booking was actively watching the specific cell check referenced in AMF no. 79. Finally, there is also no evidentiary basis for concluded that Defendant Mathews, specifically, was actually/subjectively aware of the cell check in AMF no. 79, *and* that Mathews knew this cell check was improper.**

<u>**Undisputed**</u> **that Officer Ashleigh Warren (or at least, whoever is depicted in the video) did not document "the seizure", or otherwise interact with Mrs. Frazier at 3:37am on December 1, 2015.**

<u>**Immaterial**</u>**, for (as just discussed) there is no evidence suggesting Defendant Mathews was subjectively/actually aware of Mrs. Frazier's purported "seizure" and/or any allegedly improper cell checks by Officer Warren at 3:37am. Thus, AMF no. 79 does not speak to**

Defendant Mathews' knowledge or Officer Warren's knowledge, and is therefore irrelevant for a deliberate indifference/willful & wanton analysis/ADA discrimination analysis.

The remainder of AMF no. 79 is not a "fact", but rather a legal argument/conclusion, and therefore does not require a Reply.

80.     Ms. Frazier can be seen having an apparent seizure at 3:37 am and the final seizure at 3:50 pm being her penultimate movement. Sergeant Mathews should have seen the seizures. (Ex. 16 c. Video 4, 32).

**REPLY:**        **Undisputed** only insofar as the video shows what it shows, but **disputed** that there is evidence establishing that these were "seizures" and/or that Defendant Mathews was aware of them. These "seizures" are also **immaterial** for Defendant Mathews, given the lack of evidence suggesting that he was subjectively/actually aware of either one.

For the first sentence: Plaintiff cites to video footage without medical testimony establishing that these are, indeed, "seizures". Thus, Plaintiff's claim is just that – a claim unsupported by the required evidence that "seizures" occurred (as compared to Mrs. Frazier's tossing/turning in her sleep, stretching, etc.). FRCP 56(e)(2).

For the second sentence: this is a legal argument/conclusion that does not require a Reply. (Moreover, "should have known" sounds in negligence, not deliberate-indifference). Out of a surplus of caution, however: AMF no. 80 is focused on Defendant Mathews' knowledge about apparent "seizures", but does not establish through competent evidence that Mathews was aware of these "seizures". Instead, Plaintiff simply concludes Mathews "should have seen" the claimed seizures – despite the fact that one of the "seizures" occurred over eight hours after Mathews' shift at the Jail had ended. (Fact no. 2). The lack of evidence regarding the 3:37am "seizure" has already been discussed. (*See* Reply to AMF no. 79).

81.     With deliberate indifference, the correctional officers performed negligent cell checks thirteen times throughout the night and into the morning. These were negligent because all the officers did was walk past her cell without even looking inside. These checks were supervised by Mathews who sat at the booking desk all night and was able to observe the

checks, and at least one of the checks was performed by Mathews. (Ex. 16 c. Video 5-3:37, Ex. 16

g. Video 33- 16:44; Ex. 2- Officer Location Report).

**REPLY:**       **AMF no. 81 is a legal conclusion, and therefore does not require a response. Nonetheless, out of a surplus of caution:**

**<u>Disputed</u> that "deliberate indifference" was manifested by correctional officer.**

**<u>Disputed</u> that any cell checks were "negligent". Plaintiff does not cite evidence supporting her claim. Also, <u>immaterial</u>, as "negligent cell check" is not a basis for liability in this action. (ECF #59 (having cell-check related claim); ECF #83 (dismissing cell-check related claim with prejudice); ECF #110 (having no "negligent cell check" claim)).**

**<u>Undisputed</u> that Defendant Mathews was the sergeant on duty at the Jail, and thus a supervisor. (Fact nos. 1, 3–4).**

**<u>Disputed</u> that any evidence establishes that Defendant Mathews was aware of improper cell checks done by other officers, or "sat at the booking desk all night". (*See* Reply to AMF no. 79). Rather, there is no evidence establishing who is who in the video.**

**<u>Undisputed</u> that Mathews performed one cell check on December 1, 2015. To the extent AMF no. 81 suggests to the contrary, <u>disputed</u> that Mrs. Frazier presented any signs/symptoms of medical distress at that time that Defendant Mathews and the other officers had not already previously, repeatedly investigated. (Ex. 2, Decl. of A. Mathews, ¶¶ 14–19, 25–27).**

82.    The correctional officers, under the supervision of Mathews, spoke with Ms.

Frazier, but failed to provide medical assistance. (Ex. 16 Video file No. 6, 3:50)

**REPLY:**       **<u>Disputed</u> only insofar as the term "failed" implies the correctional officers had a factual bases for requesting/providing medical assistance in the first place. And <u>immaterial</u> as to Defendant Mathews, as the actions/knowledge of certain correctional officers do not establish (without more evidence, which Plaintiff does not provide) Defendant Mathews' *own* knowledge/conduct with regards to Mrs. Frazier.**

**Also: AMF no. 82 appears to be a legal conclusion/argument, and not a "fact" that would require a Reply.**

83.    The correctional officers, under the supervision of Mathews, ignored Ms. Frazier's

pleas for help. They entered her cell, but instead of rending aid, they merely ignored her distress,

moved her sleeping mat away from the door, and left. They did this three times at 4:45am,

4:53am, and 5:27am. (Ex. 16 d. Video files Frazier being dragged while on her mat).

**REPLY:**      **To the extent AMF no. 83 is a legal argument/conclusion instead of a "fact",
no reply is needed. Out of a surplus of caution:**

**<u>Undisputed</u> that Mathews was a sergeant at the Jail, and thus a supervisor. (Facts nos. 1,
3–4).**

**<u>Undisputed</u> that correctional officers moved Mrs. Frazier away from her cell door so she
could not injure herself, and at the times specified by Plaintiff. (Facts no. 44–45, and
evidence cited therein).**

**<u>Disputed</u> that correctional officers "ignored" Mrs. Frazier's distress when they moved her
sleeping mat away from the door. There is no evidence establishing that the officers in
question were aware that Mrs. Frazier was experiencing a medical emergency at the times
in question, and there *is* evidence that Mrs. Frazier was moved away from the door for her
own safety. (Fact no. 45, and evidence cited therein).**

**<u>Immaterial</u> for Defendant Mathews to the extent AMF no. 83 fails to establish Defendant
Mathews' actual/subjective knowledge of the events in question, and thus cannot be a
basis for Mathews' "deliberate indifference".**

## V.      ARGUMENT

**A.      Plaintiff has not adequately disputed a number of facts, including that Defendant Mathews knew before 6:45am on Dec. 1, 2015 that Mrs. Frazier was in medical distress.**

Plaintiff makes a number of factual claims that are not supported by competent evidence, are predicated upon speculation, or are simple assertions by the Plaintiff's counsel. For example, it is undisputed that Ms. Frazier told Mathews about her "heroin withdrawal" around 6:45am on December 1, 2015. (Facts nos. 49, 50, 52). Plaintiff attempts to establish that Mathews knew this fact *earlier* by citing: (1) non-verbatim summaries of unsworn statements made by Mrs. Frazier's fellow detainees to Illinois State Police investigators; (2) a misreading of paragraph 36 of Defendant Mathews' declaration, and (3) by speculating about what the Jail's security footage does and does not show, without any medical or fact witness testimony establishing the same. (Resp. and Reply to Facts nos. 6, 31[A], 31[B], 32, 33, 37, 42, 43, 47, 48, 51, 61); (Add'l Mat. Facts and Replies, nos. 75, 76, 77, 78, 79, 80, 81, 83). Plaintiff also attempts to claim that Defendant Mathews somehow would have identified Mrs. Frazier's purported medical distress if *other officers* conducted more rigorous cell checks. (Resp. & Reply to Fact no. 5; Add'l Mat. Facts and Replies, nos. 79, 80, 81). As Defendants have already established in their detailed Replies to Plaintiff's Responses, Plaintiff has not adequately "disputed" any of the identified facts with competent evidence, and they should be treated as "undisputed" for purposes of this Motion. FRCP 56(e)(2).

**B.      Deliberate Indifference (diphenhydramine toxicity): Plaintiff repeatedly tries to fault Mathews for not searching Ms. Frazier for contraband. This cannot be a basis for liability in this case, as this theory has been dismissed with prejudice.**

Defendant Mathews has already argued that there was no basis for charging Mathews with knowledge of Ms. Frazier's contraband diphenhydramine, the actual causal mechanism for

Ms. Frazier's demise. To counter this, Plaintiff raises two arguments. Both can be quickly dispatched.

**First**, Plaintiff argues that Mathews had a duty to search Ms. Frazier, and if he did so, he would have discovered the contraband drugs. (ECF #141, p. 29, 30). But neither Mathews nor Champaign County is being accused of failing to search Ms. Frazier – rather, they allegedly disregarded a serious medical need, or, for the County, to have discriminated against Mrs. Frazier on the basis of a disability. (ECF #110, Counts I, III, IV). Moreover, Mathews himself had no role in whatever searches *were* done for Ms. Frazier when she entered the Jail on November 30, 2015. He was not even working at that time, (Fact no. 2, 12), and there is no evidence establishing he had any duty or basis to search Mrs. Frazier during his shift. (Plft's Ex. 3, Dep. of J. Schwartz, at 97–101). Furthermore, Plaintiff already tried to include a "search" issue in this litigation. (ECF #59, Counts V). The officers alleged to have been at fault have been dismissed with prejudice, along with Plaintiff's "search" theory of liability. (ECF # 83).

Moreover, whether Mathews "could" have conducted a search and "maybe" discovered the contraband diphenhydramine is beside the point. This is not a negligence action. Mathews cannot have "constructively" known something was true: he had to actually, demonstrably know that Ms. Frazier had contraband on her person during the night shift of December 1, 2015. *See, e.g., Estate of Wells v. Bureau Cnty.*, 723 F. Supp. 1061, 1079–80 (C.D. Ill. 2010). There is no evidence establishing such subjective knowledge for Defendant Mathews. (Pftl's Reply to Fact no. 8).

**Second**, Plaintiff claims Mathews was "on notice" of Ms. Frazier's contraband because she had previously smuggled drugs into the Jail, was a "known heroin user", and had also

apparently suffered medical distress at the Jail during a previous detention. (ECF #131, p. 30–31). But where is the evidence that Mathews was aware of *any* of these prior incidents, or *knew* that Mrs. Frazier was a heroin user before 6:45am? There is none. Deliberate indifference focuses on what the defendant was subjectively aware of, and it is axiomatic that facts outside Mathews' demonstrable knowledge do not play into the analysis. *See, e.g., Well, supra*.

Plaintiff attempts to distinguish the instant litigation from *Rice v. Correctional Medical Services*, 675 F.3d 650 (7th Cir. 2012). Defendants readily acknowledge that *Rice* is not a factual facsimile to the instant litigation – precedent rarely is. What *Rice* demonstrates, however, is that a correctional officer cannot be deliberately indifferent to "Condition B" (compulsive water drinking) when the correctional officer had no reason to know "Condition B" was a realistic possibility – even though the officer was aware of "Condition A" (schizophrenia/refusal to take medication), which was a but-for cause of "Condition B". This premise is just as applicable in *Rice* as here, and the implications are straightforward: Mathews eventually learned of "Condition A" (claimed heroin withdrawal), but had no reason to believe that "Condition B" (diphenhydramine abuse) was a possible consequence of Ms. Frazier's conduct. At least the officer in *Rice* knew the decedent had access to the drinking water (which would ultimately lead to his demise); here, Mathews had no clue Ms. Frazier possessed contraband in the first place. (Reply to Fact no. 8).

In sum: Plaintiff has failed to produce any competent evidence establishing that Defendant Mathews *knew* Ms. Frazier possessed contraband diphenhydramine. Therefore, Mathews could not have been "deliberately indifferent" (or willful and wanton) towards Ms. Frazier's demise from diphenhydramine abuse, and he is entitled to summary judgment.

**C.      Deliberate Indifference (withdrawal symptoms): Mathews' responded reasonably once alerted of Mrs. Frazier's heroin-related issues at 6:45am on Dec. 1, 2015.**

Plaintiff argues Defendant Mathews' response to Ms. Frazier *once he learned of Mrs. Frazier's medical issue a 6:45am* was "unreasonable". (ECF #141, p.26–27). To the contrary, the record and law shows that Mathews reasonably responded to Mrs. Frazier's complaints of heroin issues pain, defeating a finding of "deliberate indifference" for heroin withdrawal.

Preliminarily, a defendant cannot be "deliberately indifferent" if he or she "responded reasonably to the risk, even if the harm ultimately was not averted". *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 419, 424 (7th Cir. 2017). A "reasonable response" includes investigating the complaint, referring it to a medical provider, and deferring to the medical providers for treatment decisions. *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005).

*Gayton v. McCoy* provides a useful illustration for what constitutes a "reasonable response", even though it concerns correctional medical staff instead of correctional officers. 593 F.3d 610, 622 (7th Cir. 2010). In *Gayton*, summary judgment was affirmed for one prison nurse (Nurse Radcliff) when the decedent-prisoner complained to the nurse of chest pains. *Id.* Rather than immediately referring the decedent to a doctor (as required by the prison's policies), Nurse Radcliff had the decedent call for family to bring the decedent's medications to the prison. *Id.* The nurse also left a slip in the decedent's chart to see the doctor if those medications were not brought by the next day. *Id.* To the Seventh Circuit, Nurse Radcliff took "reasonable measures" (even if contrary to policy) to ensure the decedent would have access to their medicine. *Id.* at 623. In contrast, summary judgment was *reversed* for another nurse (Nurse Hibbert) who, when faced with "the guards' concerns and a bag full of [the decedent's vomit]", refused to see decedent. *Id.* at 623–24.

Here, the undisputed facts show that, shortly after first learning of Ms. Frazier's potential withdrawal issues, Mathews referred Ms. Frazier to the Jail's medical professionals, which he knew would soon be on site at the Jail. (UMF #53–54). Mathews also personally informed a nurse at the Jail about Ms. Frazier's heroin-related stomach pain. (UMF #59). Mathews did not, admittedly, call 911 and have Ms. Frazier sent to a hospital, or immediately call a medical professional. But neither did Nurse Radcliff in *Gayton*, who likewise did not contact the on-call physician (contrary to the *Gayton* prison's policies), but *did* take steps to ensure the inmate would receive the necessary medications within twenty-four hours. Plaintiff would make Defendant Mathews out to be like Nurse Hibbert from *Gayton*, actively refusing to address the inmate's medical concerns. The facts do not bear out this comparison. As the Seventh Circuit has noted: "Perhaps it would be a different matter if [the CO] had ignored [the inmate's] complaints entirely, but we can see no deliberate indifference given that [the officer] investigated the complaints and referred them to the medical providers who could be expected to address [the inmate's] concerns." *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (grievance officer).

Defendant Mathews' thus responded reasonably when he became aware that Ms. Frazier had stomach pain related to heroin withdrawal when he referred Ms. Frazier to the Jail's medical providers. Stated differently, Mathews was not deliberately indifferent to a serious medical need.

**D. Proximate Causation/Deliberate Indifference ("self-medication"): There is no evidence showing Mathews knew of any risk Ms. Frazier would "self-medicate".**

Preliminarily, Defendants cannot determine whether Plaintiff is arguing Ms. Frazier's "self-medication" with diphenhydramine is a basis for deliberate indifference, or, instead, is a causal connection between indifference to Ms. Frazier's contraband possession (and/or withdrawal symptoms) to her demise. Defendants will address both apparent arguments.

For deliberate indifference: Mathews cannot be deliberately-indifferent to the possibility that Ms. Frazier would "self-medicate" on contraband drugs, for the same reason he cannot be deliberately indifferent to her diphenhydramine toxicity. Namely, that Mathews did not know Ms. Frazier possessed any contraband medications with which she could self-medicate. *See* Part V.B, *supra*. To the contrary, Ms. Frazier appeared to be actively hiding her possession of these drugs, judging from the Jail security footage and the fact she did not apparently advertise her possession of contraband. (Reply to Fact no. 8); (Ex. 11, "39 F2" at 1531; "194 H1" at 1523); (ECF # 142, Plft's Resp. to Fact no. 27). Little more needs to be said on this point.

For proximate causation: Defendant Mathews has already argued Ms. Frazier's independent decision to abuse diphenhydramine breaks the causal chain between any alleged misconduct on his part and Ms. Frazier's demise. It is not clear to Defendant that Plaintiff rebuts this argument. Instead, Plaintiff appears to restate her problem: rather than death-by-contraband, Plaintiff claims "what actually killed Ms. Frazier was self-medication", meaning Ms. Frazier decided to take the contraband diphenhydramine (i.e., "self-medicate") because Mathews allegedly "ignor[ed]" her. (ECF #141, p.30). Stated differently, Plaintiff responds to a proximate-cause/foreseeability argument with a *but-for* causation argument. Plaintiff does not provide any evidence that Mathews knew of the contraband, and consequently was aware of any possibility that "self-medication" (i.e., abusing the contraband pills) may occur. (Reply to Fact no. 8).

In sum, there is no basis for Mathew's liability for Mrs. Frazier's decision to "self-medicate".

## VI.     CONCLUSION

For the reasons discussed above, summary judgment should be entered these Defendant's favor on all counts.

Respectfully submitted,

ARNOLD MATHEWS and CHAMPAIGN
COUNTY, ILLINOIS, Defendants

s/ Keith E. Fruehling_____
Attorney for Defendants
ARDC #6216098
Heyl, Royster, Voelker & Allen
301 N. Neil St., Suite 505
P.O. Box 1190
Champaign, IL 61824-1190
217-344-0060 Phone
217-344-9295 Fax
E-mail:  kfruehling@heylroyster.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2019, I electronically filed the foregoing Defendant Mathews' And Champaign County's Reply To Plaintiff's Response To Defendant's Motion For Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ms. Shayla Maatuka
Maatuka Al-Heeti Emkes, LLC
2101 Windsor Place, Suite B
Champaign, IL 61820
Email: shayla@madelaw.net

Mr. Robert P. Vogt
Vogt & O'Kane
20 S. Clark St., Suite 1050
Chicago, IL 60603
Email: bvogt@vogtokane.com

I also hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  None

s/ Keith E. Fruehling
Heyl, Royster, Voelker & Allen