E-FILED
Friday, 09 August, 2019  02:04:22 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| JACQUELINE JONES, INDEPENDENT ADMINISTRATOR of the ESTATE of TOYA D. FRAZIER, DECEDENT, | |
| **Plaintiff,** | |
| **v.** | Case No. 16-2364 |
| SERGEANT ARNOLD MATHEWS, CHAMPAIGN COUNTY, ILLINOIS, CECILE KEMP, LPN, BETH NOVAK, RN, and CORRECT CARE SOLUTIONS, LLC, | |
| **Defendants.** | |

## ORDER

This matter is before the Court on Defendants Sergeant Arnold Mathews and Champaign County, Illinois' (collectively "the County Defendants") Motion for Summary Judgment (#136). Jacqueline Jones, Independent Administrator of the Estate of Toya D. Frazier ("Plaintiff") filed a Response to the County Defendants' Motion for Summary Judgment (#141). The County Defendants also filed a Reply (#145).

For the reasons discussed below, the County Defendants' Motion for Summary Judgment (#136) is GRANTED. Judgment is entered in favor of Defendants Arnold Mathews and Champaign County, Illinois, and against Plaintiff. This case is terminated.

## I.    Factual Background[1]

---

[1] As Defendants have pointed out, Plaintiff has characterized many facts as disputed when they are not actually in dispute. Rather, Plaintiff interjects improper argument, additional "facts," and unsupported disagreements into her response to allege that the facts are disputed. In its recitation of the facts, the Court will note where Plaintiff has identified a "dispute" and will indicate whether the fact is actually in dispute or whether Plaintiff is merely arguing with how the facts should be viewed or adding additional, unsupported facts to her response, which is improper. *See* L.R. 7.1(D)(2) (noting that responses to undisputed material facts and disputed material facts should be kept separate); *See also Edward E. Gillen Co.*

The Court construes the evidence in the light most favorable to Jones (and Frazier) as the non-moving party. *See Lovett v. Herbert*, 907 F.3d 986, 990 (7th Cir. 2018).

On November 30, 2015, at 8:45 a.m., the Decedent, Toya Frazier ("Frazier"), reported to the Champaign County Jail to begin serving a sentence for retail theft. Frazier's time at the Champaign County Satellite Jail ("the jail") would last only two days; from November 30, 2015, until her death in the early evening on December 1, 2015. At the time Frazier reported to the jail, she reported that she suffered from hypertension, morbid obesity, insomnia, gastroesophageal reflux disease, joint pain of lower extremities, and history of drug abuse. It is undisputed that Frazier's last heroin use occurred the night before she arrived at the jail, on November 29, 2015, at approximately 8:30 p.m. d/e #137, Ex. 8, Receiving Screening.

Frazier arrived at the jail at approximately 9:50 a.m. on November 30, 2015. During the intake process, an "Initial Classification Listing" was completed. d/e #137, Ex. 5, Initial Classification Listing. The Initial Classification Listing stated that Frazier reported, among other things, being a heroin user, having high blood pressure, and having a left knee injury.[2] Additionally, Frazier's "Initial Mental Health Screening Assessment" documents that Frazier was not experiencing withdrawal symptoms, and not using drugs. d/e #137, Ex. 7, Initial Mental Health Screening and Assessment. At approximately 11:20 a.m. Frazier was placed in cell F2 with a medical watch designation. Frazier was permitted to keep her knee brace and cane when she entered the cell.

At approximately 1:00 p.m. on November 30, 2015, Beth Novak, a nurse for the jail, completed an Initial Receiving Screening of Frazier. d/e #137, Ex. 8, Receiving Screening. During this screening, Novak took Frazier's vital signs and did a complete

---

*v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993) (stating that a party seeking to avoid summary judgment may not establish a dispute of material fact with unsubstantiated assertions in its factual summary).

[2] Plaintiff indicates that this fact is "disputed" because it is contradicted by an earlier statement that Defendant Mathews did not know about Frazier's medical condition. This does not make the fact disputed. The Initial Classification Listing states that Frazier was suffering from these conditions, *see* d/e #137, Ex. 5, and the fact will therefore be treated as undisputed. FED. R. CIV. P. 56(e)(2) (stating that if a party fails to properly address another party's assertion of fact, the court may treat the fact as undisputed for the purposes of the motion for summary judgment.)

2

assessment, noting that Frazier was alert and oriented, had appropriate affect, speech, and thought processes. Novak further noted that Frazier was experiencing and expressed no discomfort at that time. Novak included that Frazier had used heroin the previous evening and that Frazier "brought no meds in." *Id.*

At 4:00 p.m.[3] on November 30, 2015, Novak completed a COWS[4] assessment of Frazier. d/e #137, Ex. 9, Emerald COWS Score Sheet. This COWS assessment yielded a score of 0, indicating that Frazier was not experiencing any withdrawal symptoms at that time. *Id.* There is no evidence that Frazier was suffering from any type of physical problems outside of high blood pressure during her first day in the jail, and no evidence that Frazier ingested any outside medication at this time.

At approximately 6:45 p.m. on November 30, 2015, a female officer took Frazier to the shower room, where Frazier was strip searched before taking a shower. Frazier was then placed in cell H4 at approximately 7:00 p.m. with another female inmate.

Defendant Arnold Mathews is a sergeant for the Champaign County Sheriff's Office. Mathews worked at the Champaign County Satellite Jail from 11:35 p.m. on November 30, 2015 until about 8:30 a.m. on December 1, 2015. Mathews' primary responsibility during his shift was to ensure the safety and security of all individuals, including Frazier, held in the jail.

There is no evidence that Frazier made any noise or manifested any symptoms of distress from 11:35 p.m. on November 30, 2015, until around 2:30 a.m. on December 1, 2015. Between or around 2:30 a.m. and 3:00 a.m., Frazier began to intermittently moan and groan loud enough that Defendant Mathews could hear her. Mathews did not recall

---

[3] There is some testimony that the November 30, 2015, COWS assessment was actually performed at 1:00 p.m., not 4:00 p.m. as documented. For the purposes of this Motion for Summary Judgment, it is immaterial whether the November 30, 2015, COWS assessment was performed at 1:00 p.m. or 4:00 p.m.; it is only material that a COWS assessment was completed on November 30, 2015, that showed Frazier experiencing no withdrawal symptoms.

[4] A COWS assessment is a "clinical indication for heroin or alcohol or substance withdrawal" that asks basic questions on the signs and symptoms of withdrawal and assigns a numerical value to the individual to determine the severity of the individual's withdrawal symptoms. d/e #137, Ex. 14, Deposition of Lisa K. Feather, pg. 60, ln. 6-25; pg. 61, ln. 1-13. If the assessed numerical value is above an 8, the individual "is likely going into severe withdrawal." *Id.* at 60.

Frazier verbalizing any concerns alongside her groaning at this time.[5] During this time frame and into the night, Mathews and several other correctional officers responded to Frazier's calls to figure out what, if anything, was wrong with her.[6] During the 2:30 a.m. to 3:00 a.m. time frame, Frazier did not tell Mathews or any other correctional officers why she was moaning or what was wrong with her.[7]

At approximately 2:50 a.m. on December 1, 2015, Mathews had Frazier moved from cell H4 to H1, where she did not have a roommate.[8] When Frazier was moved from

---

[5] Plaintiff failed to respond to this fact, thus it is deemed admitted. L.R. 7.1(D)(2)(b)(6).

[6] Plaintiff states that this fact is disputed because Mathews should have taken additional/different actions. This does not make the fact that Mathews and several other officers responded to Frazier's cell disputed. This fact can be viewed on jailhouse video. d/e #137, Ex. 11. Plaintiff's statement that Mathews should have acted differently is argument and will not be considered for the purposes of establishing the facts.

[7] Plaintiff attempts to characterize this fact as "disputed." However, as Defendants note, Plaintiff has failed to present competent evidence to dispute this fact. Plaintiff points to "detainee testimony," which consists of unsworn statements of two other inmates contained within a summary of an internal Illinois State Police investigation. *See* Plaintiff's Memorandum in Response to County Defendants' Motion for Summary Judgment, d/e #141, Ex. 9 and Ex. 10. These types of unsworn hearsay statements are not proper evidence to support or rebut a fact under Federal Rule of Civil Procedure 56(e). *See Collins v. Seeman*, 462 F.3d 757, 762 n.1 (7th Cir. 2006) ("Collins attempted to inject additional facts into the case in the form of unsworn written summaries prepared by investigators from unsworn statements made by other prisoners housed on Collins's cell block at the time of his suicide. These prisoner interviews were apparently taken in the course of an internal prison investigation following Collins's death. The district court did not consider the content of these statements in its summary judgment decision, and we conclude that this was proper." The prisoners' unsworn statements do not satisfy the requirements of FED. R. CIV. P. 56(e)); *see also Haywood v. Lucent Techs.*, 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible hearsay cannot be used to overcome a properly supported motion for summary judgment). Plaintiff also cites to "video evidence," but the jailhouse videos lack sound and therefore do not show that Frazier verbalized her concerns to Mathews. Finally, Plaintiff cites to "Mathews' statement," presumably meaning his Affidavit where he states "[a]s with earlier in my shift, Ms. Frazier did not present any signs or symptoms of medical distress that I could identify – aside from the complaint of withdrawal-based stomach pain." d/e #137, Ex. 2, Declaration of Arnold Mathews, ¶ 36. To the extent that Plaintiff construes this statement to say that Frazier complained to Mathews about withdrawal earlier in his shift, the Court disagrees. Mathews' statement was made after he admitted that Frazier complained about heroin withdrawal around 6:45 a.m.; a fact the parties agree upon. Thus, his statement in paragraph 36 is merely an indication that, after learning of the withdrawal-based complaints at 6:45 a.m., he did not notice any signs or symptoms of medical distress, just like earlier in his shift. To be clear, the Court is not drawing any inferences in favor of Defendants pertaining to this statement; there are no inferences to be drawn. Rather, Plaintiff's counsel is attempting to attribute a statement to Defendant Mathews that he did not make in order to create a dispute of material fact, which is impermissible. Because Plaintiff has failed to present competent evidence to rebut this fact, it is deemed undisputed for the purposes of this Motion. FED. R. CIV. P. 56(e)(2).

[8] Plaintiff disputes Mathews' reason for moving Frazier to another cell but does not dispute that Frazier was moved from cell H4 to H1. Thus, the fact that Frazier was moved from H4 to H1 is treated as undisputed.

cell H4 to H1, she was able to walk under her own power, albeit with assistance from a cane.

Most of the disputed evidence in relation to Defendant Mathews' actions occurs during Plaintiff's time in cell H1 from the hours of 2:50 a.m. to approximately 6:45 a.m. From approximately 2:50 a.m. until about 4:40 a.m., jailhouse videos (with no sound) show Frazier appearing restless, rocking back and forth on the ground, and going over to the toilet multiple times. d/e #137, Ex. 11, jailhouse videos. Frazier is also seen walking up to the door of her cell on several occasions during this time. At approximately 3:50 a.m., the video footage shows a correctional officer enter Frazier's cell and speak with her.

At approximately 4:40 a.m., Frazier can be seen briefly knocking on her cell door with her hand, before lying back down.[9] Between 4:40 a.m. and 6:10 a.m., Frazier can be seen lying on her back kicking her cell door multiple times. During this time, Mathews and other correctional officers repeatedly responded to Frazier's kicks. Each time the officers responded, Frazier declined to tell officers what was wrong with her.[10] The video footage shows the correctional officers moving Frazier and her mat away from her cell door. Frazier would then move the mat back to the door to resume kicking. According to the footage, this happened around 4:45 a.m., 4:53 a.m., and 5:26 a.m.

At some point between 6:30 a.m. and 7:00 a.m., (likely at 6:45 a.m.) on December 1, 2015, Frazier told Mathews that her stomach hurt due to heroin withdrawal.[11] After learning of this fact, Mathews told Frazier that he would let the nurse know of her

---

[9] Plaintiff characterizes this fact as disputed because Plaintiff states that Frazier had already banged on the door multiple times throughout the night. This does not make the fact that Frazier did it at 4:40 a.m. disputed.

[10] Plaintiff disputes this fact with the same inmate statements identified in footnote 6. For the same reasons, this is not competent evidence and the fact is therefore deemed undisputed for the purposes of this motion. FED. R. CIV. P. 56(e)(2).

[11] Defendants indicate that sometime after 6:10 a.m. Frazier told Mathews three times that her stomach hurt, but she did not tell him it was because of heroin withdrawal until the third time at approximately 6:45 a.m. Plaintiff continues to argue that Frazier informed Mathews multiple times throughout the night, using the same evidence that the Court has already decided will not be considered. For the purposes of this particular fact, it is only material that the parties agree that by at least 6:45 a.m., Frazier told Mathews that her stomach hurt due to heroin withdrawal.

situation. The video footage shows Frazier kick the cell door a few more times after 6:45 a.m., and then she does not kick the door again.

At 7:05 a.m. on December 1, 2015, Mathews sent the jail's medical staff an e-mail asking them to see Frazier because she said her stomach hurt due to heroin withdrawal. d/e #137, Ex. 12, e-mail from Arnold Mathews. There is no evidence that Frazier moaned or otherwise summoned any officers to her cell for the remainder of Mathews' shift, nor did she have any interactions with Mathews for the rest of his shift. At some point between sending the email and the end of his shift, Mathews personally encountered a jail nurse and told her that Frazier complained of stomach pain that she attributed to heroin withdrawal.

At approximately 9:00 a.m., (30 minutes after Mathews' shift ended) medical staff saw Frazier during the jail's morning med pass. Later that morning, at approximately 11:45 a.m., nurse Novak performed another COWS assessment of Frazier. During this assessment, Frazier complained of stomach pain at a level of "2" out of 10 and restlessness at a level of "5" out of 10. This resulted in Frazier's total COWS score being a 7, which is considered "mild" withdrawal. d/e #137, Ex. 9, Emerald COWS Score Sheet. In response to Frazier's COWS score of 7, nurse Cecile Kemp asked Novak to call the on-call doctor, Dr. Fatoki, to obtain orders for Frazier.

At approximately 2:30 p.m. on December 1, 2015, Frazier asked Novak when her next dose of heroin withdrawal medication was going to be provided. Novak responded by telling Frazier that she would receive her next dose of heroin withdrawal medications during the jail's afternoon med pass, between 4:00 p.m. and 4:30 p.m.

At approximately 3:23 p.m., Frazier appears on video putting "what appear to be pills" into her mouth. Frazier was alone in her cell at this time, and the pills appear to come from Frazier's bag of personal belongings. At approximately 3:50 p.m. on December 1, 2015, Frazier appears on video to stop moving. At approximately 5:00 p.m. a correctional officer found Frazier unresponsive and not breathing in her cell. This correctional officer notified a sergeant, who, in turn, advised the correctional officer that he had called for medical assistance. At approximately 5:11 p.m., paramedics arrived and

transported Frazier to the hospital. At 5:46 p.m., on December 1, 2015, Frazier was pronounced dead.

According to the Coroner's Report, Frazier died from diphenhydramine toxicity. d/e #137, Ex. 13, Coroner's Report. The parties do not dispute that, while at the jail, Frazier ingested Aleve p.m. and/or Advil p.m., both of which contain diphenhydramine and which Frazier secretly smuggled into the jail.[12] No one disputes that Frazier was allergic to diphenhydramine.[13] Finally, none of the nurses or correctional officers at the jail were aware that Frazier smuggled the pills into the jail.[14]

## II.     Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture. *See Singer*, 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's

---

[12] Although there appears to be a dispute about whether Frazier died from a diphenhydramine allergy or a diphenhydramine overdose, there is no dispute that Frazier independently and voluntarily ingested pills that contained diphenhydramine. d/e #137, Ex. 14, Feather Dep. pg. 105, ln. 16-25; pg. 106, ln. 1-22.

[13] Plaintiff tries to dispute this contention but cites to no evidence. Rather, Plaintiff's nursing expert expressly stated that Frazier's chart listed the allergy and that she had no basis to dispute the contention. *See* d/e #137, Ex. 14, Feather Dep. pg. 105, ln. 10-15. This fact is therefore treated as undisputed. FED. R. CIV. P. 56(e).

[14] Plaintiff again tries to dispute this fact with no competent evidence when her nursing expert and correctional expert both stated that none of the nurses or correctional officers had any idea that Frazier had the pills with her. d/e #137, Ex. 14, Feather Dep. pg. 108, ln. 17-25; pg. 109, ln. 1-6; d/e #137, Ex. 15, Deposition of Jeffrey A. Schwartz, pg. 96, ln. 14-21. This fact is considered undisputed for the purposes of this Motion. FED. R. CIV. P. 56(e).

characterization of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge*, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), citing *Celotex Corp.*, 477 U.S. at 322-323. If the nonmovant does not come forward with evidence that would reasonably permit the finder of fact to find in his favor on a material question, then the court must enter summary judgment against him. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

## III.   Analysis

The County Defendants have moved for summary judgment on all counts of Plaintiff's Third Amended Complaint directed against them. Plaintiff's Third Amended Complaint (#59) asserts three claims against the County Defendants.[15] Count I alleges a constitutional deprivation under 42 U.S.C. § 1983 against Defendant Arnold Mathews. Count III alleges a violation of the Americans with Disability Act ("ADA") against Defendant Champaign County, Illinois. Count IV alleges a Wrongful Death action pursuant to Illinois State law against Defendant Mathews. The Court will address each count against each Defendant separately.

### a.   Count I – Constitutional Deprivation against Defendant Mathews

---

[15] Plaintiff's Third Amended Complaint (#59) originally asserted six claims against the County Defendants. The Court, on Defendants' Motion, dismissed Counts V, VI, and VII (see d/e #103), leaving only Counts I, III, and IV against the County Defendants for the purposes of this Motion for Summary Judgment.

Count I of Plaintiff's Complaint alleges that Defendant Mathews, acting with deliberate indifference to Frazier's serious medical need, deprived Frazier of a constitutional right under 42 U.S.C. § 1983. In particular, Plaintiff alleges that "[a]fter being made aware of Ms. Frazier's medical condition and emergency medical needs," Defendant Mathews failed to respond to "Ms. Frazier's increasingly desperate pleas for medical assistance."

For Plaintiff to establish a deprivation of her right to adequate medical care, she must demonstrate that Defendants "acted with deliberate indifference to [Frazier's] serious medical need." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (citations omitted). "This inquiry includes an objective and subjective component. The objective aspect of the inquiry concerns the [individual's] medical condition; it must be an injury that is, 'objectively, sufficiently serious.'" *Id.* at 764-65 (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"Even if the plaintiff satisfies this objective component, he also must tender sufficient evidence to meet the subjective prong of this inquiry." *Id.* "In particular, the plaintiff must establish that the relevant official had 'a sufficiently culpable state of mind, …deliberate indifference to [the detainee's] health or safety.'" *Id.* (*quoting Farmer*, 511 U.S. at 834). Put another way, "[u]nder the second prong, it must be shown that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citations omitted).

"Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Id.* As such, it is not enough that the Defendant "should have known" of the risk. *Higgins v. Correctional Med. Servs.*, 178 F.3d 508, 511 (7th Cir. 1999). As the Seventh Circuit has noted, "deliberate indifference is simply a synonym for intentional or reckless conduct, and that reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Jackson*, 300 F.3d at 764 (citations omitted).

"Consequently, to establish deliberate indifference, the plaintiff must proffer evidence demonstrating that the defendants were aware of a substantial risk of serious

injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Id.* Simply put, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Even if he recognizes the substantial risk, an official is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (*quoting Farmer*, 511 U.S. at 843).

Given the nature of this legal standard, any potential for Plaintiff's Section 1983 claim against Mathews is limited to the time between which Frazier exhibited symptoms of withdrawal to the time that Mathews acted to help her. First, Plaintiff must demonstrate that Mathews was aware of a substantial risk of serious injury. It is undisputed that Frazier did not demonstrate any signs or symptoms of heroin withdrawal until, at the earliest, 2:30 a.m. on December 1, 2015. Mathews could not have consciously disregarded a known risk to Frazier prior to this time because he could not have disregarded a serious medical need that had not manifested in any way.

Second, Plaintiff must show that Defendant failed to take appropriate steps to protect her from a known danger. Plaintiff argues that Mathews did nothing to help her. Yet, the parties do not dispute that, at 7:05 a.m. on December 1, 2015 (approximately 4 to 4.5 hours after Frazier began exhibiting symptoms of withdrawal), Mathews e-mailed the jail medical staff, informing them that Frazier was suffering from heroin withdrawal and needed to be examined by medical personnel. d/e #137, Ex. 12, e-mail from Arnold Mathews. He also directly advised a jail nurse of Frazier's condition. Considering that Mathews sought medical treatment for Frazier at 7:05 a.m., he could not have consciously disregarded a known risk to Frazier after this time. Even if Plaintiff takes issue with Mathews' actions at that time, he took reasonable steps to address her condition by notifying medical staff and thereby initiating Frazier's medical care. Once Mathews turned over Frazier's care to the medical staff, he is entitled to defer to the professional judgment of the facility's medical officials on the appropriate medical care. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).

Thus, the Court must look to the evidence between 2:30 a.m. on December 1, 2015, and 7:05 a.m. on December 1, 2015, to determine whether there is a factual basis to allow the jury to conclude that Mathews was aware of a substantial risk of serious harm to Frazier and consciously disregarded that risk by delaying until 7:05 a.m. to notify medical staff. Plaintiff's only competent evidence to support her claims are jailhouse videos showing Frazier in her two different cells at the jail. As noted above, these videos show Frazier rolling around on the ground in her cell, and rocking back and forth on the floor under a blanket. d/e #137, Ex. 11, jailhouse videos. The videos further show Frazier getting up and down several times to use the toilet, and while it is difficult to tell because the videos lack sound, they also appear to show Frazier talking and/or yelling at various times. *Id.* During this time, Frazier would intermittently moan and groan loud enough that Mathews could hear her.

The videos also show Frazier repeatedly walking up to her cell door and banging on it with her hand, as well as lying on the floor and kicking the door repeatedly multiple times between approximately 4:40 a.m. and 6:10 a.m. *Id.* Additionally, the video evidence shows that each time Frazier banged on or kicked her cell door, an officer either spoke with Frazier or entered her cell and pulled Frazier and her sleeping mat away from the door to prevent her from kicking it. *Id.* Drawing all inferences in favor of the nonmoving party, one can infer that Defendant Mathews was aware of these circumstances.

Moreover, a jury could infer that Mathews knew these symptoms were from opioid withdrawal. It is undisputed that Mathews received almost annual training regarding withdrawal, potential death from withdrawal, and when staff should call the on-call doctor. Given the nature of the conditions, their consistency with withdrawal symptoms, and Mathews prior training, a jury could draw the inference that Mathews knew the reason for her symptoms.

There is nothing in this evidence, however, that would indicate that this presented a serious risk of harm or that Mathews should have taken immediate action. First, there is no evidence that Mathews was aware that Frazier was suffering from a serious medical

issue.[16] Certainly, Mathews could have inferred that Frazier was in discomfort, and that she was sick (both vomiting and experiencing diarrhea), and the likely cause was opioid withdrawal. But, just as Plaintiff's expert noted, although stomach pain caused by heroin withdrawal may become a medical emergency "very quickly", it is not a medical emergency. *See* d/e #137, Ex. 14, Feather Dep., pg. 67, ln. 19-22. These facts alone do not rise to a serious medical need that required immediate medical attention, such as a call to the on-call doctor as suggested by Plaintiff.

Moreover, Plaintiff's Complaint alleges that "**[a]fter being made aware of** Ms. Frazier's medical condition and emergency medical needs, Defendant Mathew (sic) exercised deliberate indifference to Ms. Frazier's serious medical needs by failing to provide requested and necessary medical treatment and failing to respond to Frazier's increasingly desperate pleas for medical assistance." Plaintiff's Third Amended Complaint, d/e #59, pg. 9, ¶62 (emphasis added). However, the evidence simply fails to show this. From the time that Frazier began displaying symptoms, either Mathews or officers working with him "went to Ms. Frazier's cells several times to investigate what was wrong." D/e #137, Ex. 2. The video evidence shows that Mathews or another correctional officer checked on Frazier multiple times throughout the night, including entering her cell on several occasions. After checking on her repeatedly throughout the night, and never finding her in "any medical distress," at 7:05 a.m., Mathews sent an e-mail to the jail's medical staff requesting assistance for Frazier and personally notified another nurse about her condition. No reasonable juror could conclude that Mathews acted with deliberate indifference to a known medical need when he monitored her condition and sought medical assistance for her as soon as medical staff arrived at the facility that morning.[17]

---

[16] The Court presumes, for the purposes of this Motion, that Frazier's heroin withdrawal, if sufficiently serious, could have rose to an objectively, sufficiently serious medical issue to satisfy the first prong of the analysis.

[17] The Court may be stretching the inferences permitted by the evidence. Without any evidence that Frazier told Mathews what was wrong (despite her ability to do so and the opinion of Plaintiff's nursing expert that Frazier would be expected to tell Mathews what was wrong), Plaintiff is essentially arguing that Mathews should have inferred from Frazier's moans, rolling around, kicking the cell door, and earlier

Even Plaintiff's correctional expert, Dr. Jeffrey A. Schwartz, does not offer an opinion that Mathews was deliberately indifferent based on these facts.[18] Schwartz specifically takes issue with how long officers took to find Frazier unresponsive after she had consumed the pills around 3:23 p.m. and stopped moving around 3:50 p.m. on December 1, 2015. d/e #17, Ex. 15, Schwartz Dep., pg. 112, ln. 11-15. But there is no allegation that Mathews was involved in that process, and, in fact, it is undisputed that Mathews' shift ended far before that time period, around 8:30 a.m. on December 1, 2015. d/e #137, Ex. 2, Declaration of Arnold Mathews. This too cannot be the basis for Mathews' alleged "deliberate indifference."

That aside, Schwartz expressly opines that the correctional officers (presumably including Mathews) were "not certain" that Frazier would experience withdrawal during her incarceration. d/e #137, Ex. 15, Schwartz Dep., pg. 125, ln. 16-18. Schwartz further stated the following:

> It is not required that every time an inmate gets your attention with apparent distress that you call anybody in particular or that you call anyone **or that you even do anything**. **It is required that you check to see what's going on.** If a person stops being in distress, apparently you may – you would still try to get from them what was going on, what was the problem. **If you can't get the answer, then you make a judgment call, are they doing okay now**.

Schwartz Dep. pg. 145, ln. 25; pg. 146, ln. 1-6. (emphasis added).

---

statements to other officers that she was a heroin addict that she was experiencing withdrawal. Plaintiff argues that Mathews "should have been aware" of Frazier's medical distress based on what he observed. This sounds in negligence, which is not sufficient to hold Mathews liable under Section 1983. *Higgins*, 178 F.3d at 511; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("[e]ven objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim.")

[18] The Court notes that Schwartz opines that Frazier likely smuggled in the pills that led to her death in her cane and/or knee brace and that the brace and cane should have been searched by correctional officers. d/e #137, Ex. 15, Schwartz Dep., pg. 73, ln. 10-15; pg. 67, ln. 6-7; pg. 94, ln. 2-9. While Plaintiff attempted to add a cause of action based on the alleged improper search, the Court dismissed these claims from Plaintiff's Third Amended Complaint. *See* d/e #103. Regardless, even if these claims had not been dismissed, Mathews was not alleged to be involved in the search (or lack thereof). *See* Plaintiff's Third Amended Complaint, d/e #59.

Schwartz's testimony endorses exactly what Mathews did in this case; he checked on Frazier, tried to understand what was going on, and, receiving no answer, made a judgment call that Frazier was not in sufficient distress to warrant immediate medical attention. By Schwartz's own testimony, it appears that Mathews would have been justified doing nothing in response to Frazier's distress. Schwartz also testified that it might be a "very good decision" to send an e-mail to oncoming medical staff alerting them to see an inmate who was in distress throughout the night, which is exactly what Mathews did. d/e #137, Ex. 15, Schwartz Dep., pg. 147, ln. 17-25.

Thus, assuming that Mathews recognized a serious risk, he "is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Jackson*, 300 F.3d at 764 (*quoting Farmer*, 511 U.S. at 843). No reasonable juror could infer that Mathews checking on Frazier, asking her what is wrong and receiving no response (despite her ability to give one), and seeking medical attention as soon as the medical staff arrived to the facility, amounts to deliberate indifference. The fact that the ultimate harm[19] was not averted does not change the analysis; the undisputed material facts show that Mathews' response to Frazier was reasonable under the facts and circumstances of this particular case.

Schwartz suggests that Mathews acted inappropriately in his opinion that Frazier was in severe pain and that if Mathews had any doubt he should have resolved that doubt in favor of calling for medical assistance in the early morning hours of December 1, 2015. d/e #137, Ex. 15, Schwartz Dep., pg. 130, ln. 10-12; pg. 131, ln. 1-4. This, however, leads to the second problem with Plaintiff's allegations against Mathews; that her ultimate harm (death from diphenhydramine toxicity) was not a risk of which Mathews was aware, and thus he could not have consciously disregarded it.

As noted, it is undisputed that diphenhydramine toxicity caused Frazier's death. d/e #137, Ex. 13, Coroner's Report. It is also undisputed that neither Mathews, nor any other correctional officers, knew that Frazier possessed pills containing

---

[19] As discussed in further detail below, the harm that ultimately befell Frazier (death from diphenhydramine toxicity) is not even the harm that Mathews is alleged to have consciously ignored.

diphenhydramine that ultimately caused her death. d/e #137, Ex. 2, Declaration of Arnold Mathews, pg. 2, ¶ 11; d/e #137, Ex. 15, Schwartz Dep. pg. 96, ln. 14-21 (agreeing that there is no indication that any correctional officer knew that Frazier had contraband); d/e #137, Ex. 14, Feather Dep. pg. 108, ln. 17-25; pg. 109, ln. 1-6 (Feather stating that none of the nurses or correctional officers knew that Frazier had pills containing diphenhydramine in her possession). Thus, Mathews could not have possibly disregarded the risk that Frazier would die from diphenhydramine toxicity when he had no basis to know that diphenhydramine toxicity was even a risk.

*Rice v. Correctional Medical Services*, 675 F.3d 650 (7th Cir. 2012), a case cited by the County Defendants, illustrates the problem with Plaintiff's claim. Rice, a schizophrenic, was housed in administrative segregation at the County Jail after his psychiatric condition deteriorated. *Rice*, 675 F. 3d at 659. During his time in the jail, staff noted various problems with Rice, including regular refusal to take his medication, significant weight loss, and refusal to communicate. *Id.* at 660-662. Late one evening another inmate heard Rice "gulping water and vomiting in his cell." *Id.* at 662. Several inmates "mule-kicked" their cell doors to get someone's attention, but the inmates reported that no one ever responded. *Id.*

The next morning, Rice was found dead in his cell. *Id.* An autopsy revealed that Rice died "of acute cardiac arrhythmia triggered by a lethal decline in the sodium level in his blood, which was in turn caused by his excessive consumption of water in the hours prior to his death." *Id.* It was also found that the correctional officers had not checked on Rice overnight as they were required to do. *Id.*

Following his death, Rice's estate sued the jail officials and nurses under Section 1983. *Id.* at 663. The Estate's theory was that the jail staff was aware that Rice was mentally ill and, even if they were not aware of the possibility that Rice might die from water toxicity brought on by compulsive water drinking, there were multiple warning signs that prior to his death Rice suffered from self-destructive tendencies and a jury could find that staff members were subjectively aware of the substantial risk that Rice might harm himself fatally in some way. *Id.* at 678.

15

The district court granted summary judgment on the Section 1983 claims, reasoning that even if the guards did appreciate the gravity of Rice's mental illness, they had no warning that Rice might excessively drink water, causing his own death. *Id.* The district court ruled this way even assuming the truth of testimony from another inmate that the guards failed to check on Rice every hour as they were required to do.[20] The district court reasoned that "the guards could not be characterized as deliberately indifferent to Rice's plight because there was no evidence that those guards in particular knew of his serious medical condition and, even if they did, they could not have foreseen his death." *Id.*

The Seventh Circuit agreed with the district court, finding that there was "no evidence that the guards were subjectively aware of the possibility that Rice might engage in a behavior such as compulsive water drinking that would cause him to die within a matter of hours and that they consciously disregarded that risk. Nor is there evidence that the jail's supervisors were aware of such a possibility. On this record, a factfinder could not reasonably conclude that any of the jail personnel were deliberately indifferent to this sort of risk." *Id.* at 679.

This case is strikingly similar to *Rice*. Just like in *Rice*, there is no evidence in this case that Mathews was subjectively aware of the possibility that Frazier might ingest pills containing diphenhydramine that would cause her to die and that he consciously disregarded that risk, nor is there evidence that anyone was aware of such a possibility. In fact, there is evidence to the contrary; everyone agrees that no one at the jail had any idea that Frazier had the pills or that she would take them. d/e #137, Ex. 2, Declaration of Arnold Mathews, pg. 2, ¶ 11; d/e #137, Ex. 15, Schwartz Dep. pg. 96, ln. 14-21; d/e #137, Ex. 14, Feather Dep. pg. 108, ln. 17-25; pg. 109, ln. 1-6. Just like *Rice*, no factfinder

---

[20] The Court further notes that in *Rice*, the Estate had obtained a sworn affidavit from an inmate stating that the guards failed to perform the required cell checks, which allowed the district court to consider this evidence. As noted above, no such sworn statement exists in this case that would allow the Court to consider Plaintiff's claims that Frazier told Mathews of her distress, or the claims of other inmates that Mathews threatened to withhold medical treatment if Frazier did not quiet down.

could reasonably conclude that Mathews was deliberately indifferent to "this sort of risk." *Rice*, 675 F.3d at 679.

Plaintiff characterizes *Rice* as "drastically distinguishable" from this case, but her attempts to distinguish *Rice* fail. First, Plaintiff argues that unlike *Rice*, Mathews knew Frazier had a heroin addiction and that she would be going through withdrawal. Plaintiff's Response to County Defendants' Motion for Summary Judgment, d/e #141, pg. 29. Even assuming this is true,[21] Plaintiff did not die from heroin withdrawal; she died from diphenhydramine toxicity, and there is no evidence to suggest that Mathews (or anyone else) was aware of a risk that Plaintiff possessed and would later ingest contraband pills containing an active ingredient to which she was allergic.

Plaintiff also argues that unlike *Rice*, Frazier's death "should have been prevented by a thorough search of Ms. Frazier." *Id.* The Court has dismissed all Plaintiff's claims regarding any search that officers performed or should have performed on Frazier. Regardless, Mathews was not even involved in the search process.

Plaintiff contends that Frazier's death could have been prevented had Mathews "not displayed deliberate indifference in cell checks."[22] *Id. Rice* forecloses this argument as well. *See Rice*, 675 F.3d at 680 (even if the guards recklessly failed to conduct hourly cell checks as they were required to do, no reasonable factfinder could find that they knew of, and were deliberately indifferent to, a risk that Rice might come to the type of medical harm that caused his death).

In short, Plaintiff has failed to present evidence that would allow any reasonable jury to find that Mathews acted with deliberate indifference. Mathews' conduct from 2:30 a.m. to 7:05 a.m. on December 1, 2015, was reasonable, and, at most, negligent, which is insufficient to establish liability under Section 1983. Moreover, there is no evidence that

---

[21] While there is evidence that Frazier communicated to other jail staff about her heroin addiction, there is no evidence that Mathews knew she was an addict or that she would be experiencing withdrawal prior to her actual symptoms.

[22] Plaintiff's expert, Jeffrey Schwartz, also opined that "effective" cell checks were not performed. Schwartz Dep., pg. 178, ln. 22.

Mathews could have consciously disregarded the risk that ultimately killed Frazier because he was not aware of it.

Accordingly, Defendant's Motion for Summary Judgment as to Count I against Defendant Mathews is GRANTED.[23]

### b. Count III – Violation of the ADA against Champaign County

Count III alleges that Defendant Champaign County violated the Americans with Disabilities Act by denying Frazier medical treatment because she was a heroin addict.

Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government," which obviously includes a county jail. 42 U.S.C. § 12131(1)(B).

To state a claim under Title II of the ADA, a plaintiff must allege that: (1) she is disabled as defined under the statute; (2) she was qualified for the benefits that she sought; (3) she was denied those benefits because of her disability; and (4) the defendant is a public entity as defined by the ADA. 42 U.S.C. § 12132; *Herdman v. Univ. of Ill.*, No. 96-8025, 1998 WL 774684, *6 (N.D. Ill. Oct. 28, 1998) (unreported) (describing elements of an ADA Title II claim)).

The County Defendants argue that Plaintiff "must" show intentional discrimination, through a deliberate indifference analysis, in order to obtain compensatory damages on her ADA claim, citing to *Norfleet v. IDOC*, 2018 U.S. Dist. LEXIS 58271, *14 (S.D. Ill. 2018). This, however, is not what *Norfleet* held. Rather, *Norfleet* expressly recognized that the Seventh Circuit has **not** addressed whether intentional discrimination is required for an award of compensatory damages in an ADA case, but assumed, based on case law from the First, Fifth, Ninth, Tenth, and Eleventh Circuits,

---

[23] Defendants also argue that Mathews is entitled to qualified immunity and that Mathew's conduct was not the proximate cause of Frazier's harm. Because the Court finds no Constitutional violation, the Court is not required to reach either question. *Isby*, 856 F.3d at 529.

that the deliberate indifference standard did apply. *Norfleet*, 2018 U.S. Dist. LEXIS at *14; *See also Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 917 (N.D. Ill. November 25, 2009) (noting that while the Seventh Circuit has never squarely addressed the question, courts have almost unanimously decided that compensatory damages are available under Title II of the ADA if – and only if – the plaintiff shows intent.)

Plaintiff's Response to Summary Judgment does little to help the Court address this issue or to define the standard. Plaintiff responds, in just two paragraphs with no citations to any evidence, that Frazier was discriminated against "because of her disability" for the same reasons that she believes Mathews was deliberately indifferent, i.e. failure to call a doctor and improper cell checks. *See* Plaintiff's Response to County Defendants' Motion for Summary Judgment, d/e #141, pgs. 35-36.

Because the Seventh Circuit has not yet spoken to this question, and Plaintiff, through her analysis, does not appear to challenge that she must show intentional discrimination to recover compensatory damages under Title II of the ADA, the Court, like the *Norfleet* court, will assume (without deciding) that Plaintiff is required to show deliberate indifference to obtain compensatory damages on her ADA claim. *See Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 926 (N.D. Ill. February 19, 2010) (citing cases showing that if the parties assume, without argument, that a certain standard applies, the court is free to assume, without deciding, that the standard advanced by the parties applies). Because Plaintiff has failed to show that Mathews acted with deliberate indifference, her ADA claim therefore cannot survive summary judgment.

Even if the Court did not adopt the deliberate indifference standard in relation to the ADA claim, Plaintiff's claim still fails. At the summary judgment stage Plaintiff must do more than allege the elements of an ADA claim; she must submit competent evidence that would prove each required element. *Waldridge*, 24 F.3d at 920; *Butts*, 387 F.3d at 924. The Court will assume for the purposes of this analysis that Plaintiff has presented enough evidence to show that Frazier's heroin addiction qualifies as a disability under the ADA. Even assuming this to be true, though, Plaintiff has presented no evidence to

show that Champaign County (through Mathews or anyone else) discriminated against Frazier on the basis of her status as a heroin addict.

Plaintiff's Third Amended Complaint alleges that Frazier was "denied treatment for her withdrawal symptoms after asking for treatment." Plaintiff's Third Amended Complaint, Count III, pg. 12, ¶ 76. However, there has been no evidence to support this assertion. As noted extensively above, Plaintiff has put forth no competent evidence that she asked Mathews for treatment between the hours of 2:30 a.m. and 6:45 a.m. on December 1, 2015, and Plaintiff admits Frazier was not experiencing withdrawal symptoms prior to this time. It is undisputed that after Frazier finally told Mathews about her withdrawal symptoms at 6:30 a.m. or 6:45 a.m., Mathews almost immediately sought treatment for Frazier. d/e #137, Ex. 12, e-mail from Arnold Mathews. Thus, the allegation that Plaintiff was denied treatment after she asked for it is directly contradicted by the undisputed evidence in this case.

Additionally, Plaintiff admits that she did receive some withdrawal treatment on December 1, 2015, seeming to contradict her allegation that Frazier was denied medical care. *See* Plaintiff's Response to County Defendants' Motion for Summary Judgment, d/e #141, pg. 36 (noting that Frazier received "a smidgen" of medical care after her long night).

To the extent that Plaintiff argues that Frazier's medical care was inadequate due to delays, that claim is the basis of Plaintiff's deliberate indifference and medical malpractice claims and cannot be the subject of her ADA claim. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1994) (stating that the ADA is not violated by a prison's simply failing to attend to the medical needs of disabled prisoners and noting that the plaintiff could not maintain an ADA claim because he was complaining about incompetent treatment of his disability because the ADA does not create a remedy for medical malpractice); *See also Rouse v. Plantier*, 997 F.Supp. 575, 582 (D. N.J. 1998) (noting that *Bryant* stands for the proposition that failure to provide adequate care to a disabled prisoner does not constitute discrimination against the disabled when the plaintiff is merely claiming that he was not provided medical care at all.)

Accordingly, because Plaintiff has not presented any evidence that would allow a reasonable fact finder to determine that Frazier was discriminated against because of her status as a heroin user or addict, the County Defendants' Motion for Summary Judgment is GRANTED as to Count III.

### c. Count IV – Wrongful Death Pursuant to 740 ILCS §180/0.01 et seq. against Defendant Mathews

Next, Plaintiff asserts an Illinois State law Wrongful Death claim against Defendant Mathews. The Illinois Wrongful Death Act provides in relevant part:

> Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

840 ILCS 180/1.

As the Court has already noted in its rulings on Defendants' Motions to Dismiss, (*see* d/e #35; d/e #48), the Governmental Employees Tort Immunity Act ("Tort Immunity Act") states that:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners.

745 ILCS 10/4-105.

Section 4-105[24] provides immunity to public entities and its employees but excludes cases where an employee "through willful and wanton conduct, fails to take reasonable action to summon medical care." "As used in the Tort Immunity Act, willful and wanton conduct is defined as 'a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.'" *Estate of Wells v. Bureau County*, 723 F. Supp. 2d 1061, 1088 (C.D. Ill. 2010) (citing 745 ILCS 10/1-210).

"To the extent that Plaintiff's claim is based on willful and wanton conduct, the Seventh Circuit has held that 'the standard for assessing whether conduct is willful and wanton is remarkably similar to the deliberate indifference standard.'" *Id.* (*citing Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001)). "Given the similarity of these standards, Defendants would be entitled to summary judgment in their individual capacities for the same reasons set forth in denying Plaintiff's Section 1983 claim against the individual defendants." *Id.* (*citing Chapman*, 241 F.3d at 847).

As noted above, Plaintiff has failed to present competent evidence that would allow a jury to find that Defendant Mathews acted with deliberate indifference. Because the standard for willful and wanton conduct is "remarkably similar" to the standard for deliberate indifference, it follows that Plaintiff has also failed to present competent evidence sufficient to allow a jury to find that Defendant Mathews' conduct was willful and wanton. Without a showing of willful and wanton conduct, Mathews is entitled to immunity under 745 ILCS 10/4-105. *Wells*, 723 F.Supp. 2d at 1088 (*citing Chapman*, 241 F.3d at 847).

Accordingly, the County Defendants' Motion for Summary Judgment is GRANTED as to Count IV.

## IV.    Conclusion

---

[24] Plaintiff agrees that Section 4-105 of the Tort Immunity Act applies in this case. *See* Plaintiff's Memorandum in Response to County Defendants' Motion for Summary Judgment, d/e #141, pg. 34 (stating that Plaintiff's allegations implicate Section 4-105 of the Tort Immunity Act.)

For the forgoing reasons, the County Defendants' Motion for Summary Judgment (#136) is GRANTED. Judgment is entered in favor of the Defendants Arnold Mathews and Champaign County, Illinois, and against Plaintiff. This case is terminated.

ENTERED this 9th day of August, 2019.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE