# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 13, 2021

To:  Shig Yasunaga
UNITED STATES DISTRICT COURT
Central District of Illinois
U.S. Courthouse
Urbana, IL 61802-3369

|  |  |
|---|---|
| No. 19-2629 | JACQUELINE JONES, Independent Administrator of the Estate of Toya D. Frazier, Deceased,<br>          Plaintiff - Appellant<br><br>v.<br><br>ARNOLD MATHEWS, et al.,<br>          Defendants - Appellees |
| **Originating Case Information:** ||
| District Court No: 2:16-cv-02364-EIL<br>Central District of Illinois<br>Magistrate Judge Eric I. Long ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| RECORD ON APPEAL STATUS: | Entire record returned consisting of |
|---|---|
| Other to be returned later (specify items): | 2 Flash Drives containing doccuments 136 and 140 |

form name: **c7_Mandate**    (form ID: **135**)

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 19-2629

JACQUELINE JONES,
Independent Administrator of the
Estate of Toya D. Frazier, Deceased,

*Plaintiff-Appellant*,

*v.*

ARNOLD MATHEWS, *et al.*,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the
Central District of Illinois.
No. 16-cv-02364 — **Eric I. Long**, *Magistrate Judge*.

---

ARGUED DECEMBER 7, 2020 — DECIDED JUNE 21, 2021

---

Before SYKES, *Chief Judge*, and BRENNAN and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. On November 30, 2015, Toya Frazier reported to the Champaign County Satellite Jail to begin serving a 42-month sentence for felony theft. She died in her cell less than 36 hours later.

Jacqueline Jones is Frazier's sister and the Independent Administrator of Frazier's estate. She filed this action pursuant to 42 U.S.C. § 1983 against Sergeant Arnold Mathews, a correctional officer at the jail, alleging that he caused Frazier's death by acting with deliberate indifference to Frazier's symptoms of heroin withdrawal.[1] The district court granted summary judgment in favor of the defendants, and we affirm.

## I. Background

### A. Factual Background

Frazier reported to the Champaign County Satellite Jail around 8:45 a.m. on November 30, 2015. Shortly after her arrival, an officer at the jail conducted Frazier's intake interview. Frazier, who was 45 years old at the time, informed the officer that she was epileptic, subject to black-outs and fainting spells, had high blood pressure, had a history of substance abuse, and over the course of 2015 had experienced a stroke and undergone knee surgery. Frazier also reported that she had used heroin the night before, though she was not experiencing withdrawal at the time of the intake. The officer gave Frazier a "medical designation" because she required a cane to walk and had high blood pressure. The medical designation meant that an officer would check on Frazier at least every fifteen minutes. Because of the designation, Frazier was assigned to cell F2 in the booking area with one cellmate.

Later that day, around 1:00 p.m., a nurse at the jail conducted Frazier's health evaluation. Nurse Beth Novak noted,

---

[1] Jones also sued Champaign County, Illinois, and other jail staff members, but there are no issues on appeal pertaining to any party other than Mathews.

No. 19-2629 3

among other things, that Frazier had experienced drug withdrawal once before, three years prior. Frazier informed Nurse Novak of her prior night's heroin use but did not report experiencing any pain or withdrawal symptoms at the time. Nurse Novak described Frazier's mental state at the time of the evaluation as "appropriate" in all respects. Frazier informed Nurse Novak of several medications she was prescribed and taking at the time, though Frazier had not brought any of her medications with her to the jail. Because of Frazier's high blood pressure, Nurse Novak contacted a doctor who prescribed Frazier a blood pressure medication and Tylenol.

Nurse Novak conducted a second health evaluation later that afternoon at 4:00 p.m., this time to gauge whether Frazier was experiencing any withdrawal symptoms. Nurse Novak completed a Clinical Opiate Withdrawal Scale ("COWS") scoresheet, and assigned Frazier a COWS score of 0, meaning that she was not experiencing any withdrawal symptoms.

At approximately 6:45 p.m., correctional officer Jessica Burgener escorted Frazier from her booking cell to the shower room to conduct a strip search. She inspected Frazier's clothing, cane, and knee brace and did not find any contraband. Burgener then escorted Frazier back to her holding cell. Because of Frazier's medical designation, Burgener checked on Frazier approximately every twelve minutes. Each time Frazier reported that she was "feeling okay."

That night, Mathews began his shift at 11:35 p.m. In general, Mathews serves as the jail's direct supervisor while on site. During his shifts, he is responsible for having a pulse on everything happening at the jail and ensuring the safety of everyone at the facility. He does not typically conduct individual cell checks but will do so when correctional officers

4                                                                    No. 19-2629

responsible for the task are otherwise occupied. Medical professionals are not on site during the night shift.

The first few hours of Mathews's shift were uneventful. At approximately 2:30 a.m., however, Frazier began moaning and groaning loudly from her cell. Mathews and other correctional officers approached Frazier to find out what was wrong, but Frazier did not explain the source of her discomfort. From Mathews's perspective, Frazier "did not appear to be in any medical distress" and was physically capable of speaking, despite choosing not to. Frazier continued to loudly moan.

Sometime around 2:50 a.m., Mathews relocated Frazier to another cell within the booking area, reasoning that Frazier "may be more comfortable in her own cell, her new cell could still be easily monitored by correctional officers," and the move "may reduce her ability to disturb the detainees at the jail." Video surveillance of the cell shows Frazier rocking back and forth on the ground, dry heaving, and using the toilet several times over the course of the next few hours.

At approximately 4:40 a.m., Frazier began kicking the cell door from her sleeping mat on the ground. Mathews and other correctional officers responded to Frazier several times, but Frazier did not articulate what, if any, issues she was experiencing. Mathews instructed a correctional officer to pull Frazier's sleeping mat away from her cell door so that she could not continue to kick it. According to Mathews, he worried that Frazier "may hurt herself if she kept kicking it (given her knee brace/cane)," and "her kicks were disturbing other inmates." But once the officers left Frazier's cell, she dragged the sleeping mat back toward the front of the cell and again began kicking the cell door. Twice more the officers returned

No. 19-2629 5

to Frazier's cell, moved the sleeping mat away from the door, only for Frazier to return the mat to its original location and again begin kicking the cell door. During these encounters, Frazier did not report any symptoms to the officers or otherwise tell them what was wrong.

At approximately 6:30 a.m., Frazier told Mathews that her stomach hurt.[2] Frazier told Mathews a total of three times that she was experiencing stomach pain, but only the third time, at approximately 6:45 a.m., did she mention heroin as the cause. Mathews told Frazier he would tell the nurse about her stomach pain. He did so approximately twenty minutes later at 7:05 a.m. in a one-sentence email to the medical department: "This evening inmate Frazier was complaining of stomach pain due from withdrawing from heroin use can you see her at your early convenience." Mathews did not directly interact with Frazier again. Before the end of his shift, however, Mathews personally encountered a nurse whom he informed of Frazier's heroin-related stomach pains. Mathews's shift ended at 8:30 a.m. on December 1, 2015.

Around 9:00 a.m., a nurse spoke with Frazier about her stomach pains. Frazier did not voice any complaints at that time, nor did she display any signs or symptoms of distress, according to medical staff. The nurse then administered Frazier's blood pressure medication and Tylenol. Around 11:00 a.m., jail medical staff conducted a second COWS assessment. This time, Frazier reported that she was suffering from

---

[2] The parties dispute the exact time at which Frazier reported having stomach pains. They agree, however, that she first told Mathews of her pains sometime between 6:30 a.m. and 7:00 a.m. The exact time is immaterial for our discussion.

abdominal pain at a '2' level on a scale of 0–5 and that she felt restless at a '5' level on a scale of 0–5, for a total COWS score of 7 out of 48, which placed Frazier in the "mild withdrawal" category. Nurse Novak contacted a doctor who prescribed heroin withdrawal medications for Frazier and instructed the nurses to administer the medication immediately, and during both morning and afternoon "med passes" from that point forward.

Later that day, at approximately 2:30 p.m., Frazier asked Nurse Novak when she would be receiving the next dose of withdrawal medication. Nurse Novak informed Frazier that she would receive her next dose when she made her afternoon medication administration rounds. Frazier, however, never received her next dose of withdrawal medication. At 3:23 p.m., security footage shows Frazier remove several small items (later discovered to be pills) from a tissue in her toiletry bag and place them in her mouth one at a time. At 3:50 p.m., Frazier had a seizure and stopped moving. A correctional officer found Frazier unresponsive at 5:11 p.m. and immediately called emergency personnel who transported Frazier to the hospital where she was pronounced dead. A coroner conducted an autopsy and determined that Frazier died of "diphenhydramine toxicity due to or as a consequence of diphenhydramine misuse."[3] The pills Frazier ingested were later determined to be Advil PM, Aleve PM, or a combination

---

[3] As the district court pointed out, it is not entirely clear from the record whether "diphenhydramine toxicity" in this case means that Frazier died of a diphenhydramine allergy or overdose. The difference is immaterial for our analysis, however, because it is undisputed that Frazier smuggled the medication into the jail and ingested the pills on her own volition.

No. 19-2629                                                           7

of the two, both of which contain diphenhydramine, and had not been given to her by jail staff members.

## B. Procedural Background

Jones filed this action against Mathews in the wake of her sister's death. Jones alleges a claim of constitutional deprivation pursuant to 42 U.S.C. § 1983 and a wrongful death claim under Illinois law.[4] Defendants filed a motion for summary judgment on May 15, 2019, which the district court granted on August 9, 2019. Jones timely appealed.

## II. Discussion

Jones argues on appeal that the district court erred in granting summary judgment on her § 1983 and state law wrongful death claims because it failed to construe the record in the light most favorable to her as the non-movant. We review the district court's grant of summary judgment de novo and draw all inferences in favor of the non-moving party. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). Frazier's death is unfortunate. But Jones has not demonstrated that Mathews acted with deliberate indifference to deprive Frazier of a constitutional right. We affirm the district court's grant of summary judgment.

## A. Deliberate Indifference Claim

It is well established that "[p]rison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate

---

[4] Jones alleged eight additional claims in the operative complaint, including a claim for violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, which are not relevant to this appeal.

8                                                                  No. 19-2629

indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Jones contends that Mathews caused Frazier's death by acting with deliberate indifference to Frazier's heroin withdrawal. To assert a claim for deliberate indifference, Jones must demonstrate (1) Frazier had an objectively serious medical condition, and (2) that Mathews was deliberately indifferent to Frazier's health or safety. *See Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 423 (7th Cir. 2017). "This inquiry includes an objective and subjective component." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002).

In general, a plaintiff satisfies the objective component of the deliberate indifference inquiry with evidence that a physician has diagnosed a medical condition as requiring treatment, "or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022–23 (7th Cir. 2019) (quotations and citations omitted). "A condition can be 'obvious' to a layperson even where he or she is unable to diagnose or properly identify the cause of an observed ailment." *Orlowski*, 872 F.3d at 423. When Frazier began expressing physical discomfort, she had not been diagnosed by a physician as suffering from heroin withdrawal. But we will assume for our discussion that Jones has met the objective component of the deliberate indifference inquiry, because even assuming that Frazier's medical condition was sufficiently serious, Jones has not demonstrated the subjective component.

To satisfy the subjective element, Jones must demonstrate that Mathews was "both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and that [he] actually drew the inference." *Orlowski*,

No. 19-2629                                                                 9

827 F.3d at 424 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, and it is Jones's burden to show that Mathews acted with a "sufficiently culpable state of mind." *Estate of Simpson*, 863 F.3d at 747. A prison official acts with a sufficiently culpable state of mind when he is aware of a substantial risk of serious harm, and "effectively condones the harm by allowing it to happen." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021).

Jones argues that based on his training and years of experience as a correctional officer, Mathews knew that Frazier was experiencing opiate withdrawal, and knew that withdrawal poses a substantial risk of serious harm to someone suffering from the condition. We are not so sure that the evidence supports this argument. First, when Mathews began his shift, Frazier's health records documented only that she had used heroin the night before, and that as of 4:00 p.m. that afternoon, Frazier was not experiencing any symptoms of withdrawal. Frazier was given a medical designation because of her knee problems and high blood pressure, not because of her drug use. Second, when Frazier began moaning and groaning, Mathews asked her what was wrong. Frazier would not answer despite being capable of speaking, and did not appear to be in medical distress. We need not decide, however, whether there is enough evidence to support a jury determination that Mathews knew that Frazier was experiencing withdrawal, because Jones faces an even bigger hurdle. There is no evidence establishing that Mathews was aware of the risk of substantial harm that Frazier ultimately suffered—death from diphenhydramine toxicity.

It is undisputed that Frazier died from "diphenhydramine toxicity due to or as a consequence of diphenhydramine misuse," not heroin withdrawal. Frazier's diphenhydramine misuse occurred when she—hours after Mathews's shift ended—ingested numerous pills that she smuggled into the jail without Mathews's knowledge. Jones nonetheless contends that Mathews was aware of this precise harm, because he is "a specialist with knowledge that inmates may smuggle items," and therefore "should reasonably have foreseen the risk that Frazier would smuggle in prohibited medication and misuse it." There is nothing in the record, however, to support this contention. Before Mathews's shift began, Frazier had already spent several hours at the jail. She had been strip searched, and the correctional officer who conducted the search determined that Frazier did not possess contraband. Jones has not produced any evidence to suggest that Mathews had any reason to question the accuracy of the search performed before his shift began, and cites only Mathews's general training as a correctional officer in which he was taught to recognize symptoms of withdrawal. Even if Jones can establish that Mathews recognized that Frazier was experiencing withdrawal, there is no evidence from which a jury could reasonably determine that Mathews knew that there was a substantial risk that Frazier would die of diphenhydramine toxicity from ingesting smuggled pills. If no reasonable jury could find that Mathews was aware of that risk, then it follows that he could not have consciously disregarded that risk. Jones's deliberate indifference claim thus fails.

*Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650 (7th Cir. 2012) is instructive. Rice was an inmate at the Elkhart County Jail who suffered from schizophrenia. He died from psychogenic polydipsia (excessive water drinking) at the jail

No. 19-2629                                                                                         11

while awaiting placement in a state psychiatric facility. His Estate filed an action pursuant to § 1983 alleging, in relevant part, that jail officials and medical personnel had been deliberately indifferent to Rice's declining psychological condition. In the fifteen months that Rice spent at the jail, he had experienced several well-documented issues: he refused to take his medication, eat, or bathe, and on one occasion, he cut his own throat with a razor. Rice was in administrative segregation one night when a nearby inmate heard Rice "gulping water and vomiting in his cell." *Rice*, 675 F.3d at 662. Inmates in the surrounding cells kicked their cell doors in an attempt to get someone's attention, but no one showed up. *Id.* Jail staff found Rice dead in his cell early the next morning. *Id.*

In support of its deliberate indifference claim, Rice's Estate argued that "there were fifteen months of warning signs prior to his death that Rice could not care for himself and suffered from self-destructive tendencies, and a jury could find that staff members were subjectively aware of the substantial risk that Rice might harm himself fatally in some way." *Id.* at 678. We rejected this claim because there was no evidence that any jail staff had notice of the possibility that Rice might die from psychogenic polydipsia, a rare condition which had not before been observed in Rice. *Id.* We explained that even if a jury could find that the jail guards "exhibited a generalized recklessness with respect to the safety of the inmates" housed in administrative segregation by not conducting more frequent cell checks, there was "no evidence that the guards were subjectively aware of the possibility that Rice might engage in a behavior such as compulsive water drinking that would cause him to die within a matter of hours and that they consciously disregarded that risk." *Id.* at 679. Thus, we held, "no reasonable factfinder could find that [the guards] knew of, and were

deliberately indifferent to, a risk that Rice might come to medical harm like cardiac arrhythmia brought on by water toxicity." *Id.* at 680. The guards' knowledge of Rice's schizophrenia was not enough to establish their awareness of and indifference to the risk of Rice drinking so much water that he died.

Jones's argument here is similarly flawed. She argues that because Mathews was deliberately indifferent to Frazier's heroin withdrawal symptoms, Frazier was forced to self-medicate with contraband Advil PM pills hours after Mathews had left the jail. But even if we assume that a reasonable factfinder could conclude that Mathews recognized that Frazier was suffering from withdrawal, no reasonable factfinder could determine that Mathews knew of, and was indifferent to, a risk that Frazier might die from diphenhydramine toxicity from ingesting smuggled pain medication. *See id.* Mathews had no forewarning of this possibility, particularly when the event occurred long after his shift had ended, and after he had informed jail medical staff of Frazier's stomach pains.

Alternatively, Jones argues that even if Mathews did not directly cause Frazier's death, he caused her pain and suffering (and Jones is thus entitled to damages) by failing to respond to Frazier's withdrawal symptoms as soon as they began. She contends that Mathews's 7:05 a.m. email is evidence of his deliberate indifference to Frazier's heroin withdrawal. Jones asserts that Mathews unreasonably delayed contacting medical personnel and when he finally did email jail medical staff, he did not convey an appropriate level of urgency.

Jones relies on *Lewis v. McLean*, 864 F.3d 556 (7th Cir. 2017), where we noted that a delay in treatment may constitute

No. 19-2629 13

deliberate indifference in some circumstances. But there are two key factual distinctions between the plaintiff's circumstances in *Lewis* and the circumstances leading up to Frazier's death. First, Lewis immediately told prison officials that he was experiencing pain and explained his symptoms. *Lewis*, 864 F.3d at 558–59. Second, despite recognizing that Lewis was in such severe pain that he was unable to move, prison officials waited an hour and a half before contacting the on-call physicians. *Id.* at 560. We have explained that "[w]hether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment," *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015), and in *Lewis*, where the plaintiff's condition was so severe that it rendered him immobile, we recognized that a jury might find that the defendants exhibited deliberate indifference by delaying his treatment. *Lewis*, 864 F.3d at 563–64.

The circumstances here are quite different. Unlike Lewis who promptly told jail staff about his severe pain, Frazier did not explain her symptoms to Mathews until 6:30 a.m., four hours after her complaints began. When she finally did tell Mathews what was wrong, he contacted jail medical staff shortly thereafter by sending an email and speaking to a nurse directly. Furthermore, even if a jury could reasonably find that Mathews knew Frazier was suffering from heroin withdrawal as early as 2:30 a.m., she, unlike Lewis, had not suddenly become immobile or unconscious, and the need for urgent treatment was far less apparent. Instead, Frazier was conscious, capable of speaking, and physically able to move her sleeping mat to position herself to repeatedly kick her cell door. Mathews and the other officers on duty monitored Frazier throughout the night and Frazier continued not to tell them what was wrong despite their repeated requests, and

14 No. 19-2629

once Frazier told Mathews what was wrong, he sought medical attention on Frazier's behalf. No reasonable jury could conclude on this record that Mathews was deliberately indifferent to Frazier's heroin withdrawal. *See Earl v. Racine Cty. Jail*, 718 F.3d 689, 692 (7th Cir. 2013) ("[T]he officer's prompt call to the nurse undermines any suggestion that he acted with the reckless or malicious intent required to sustain a deliberate-indifference claim.").

**B. Wrongful Death Claim**

Jones's wrongful death claim fails for the same reasons as her deliberate indifference claim. Under the Illinois Wrongful Death Act:

> Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

740 ILCS 180/1. But under the Governmental Employees Tort Immunity Act, a public employee may not be liable for failure to provide medical care to an incarcerated person unless the official, "through willful and wanton conduct, fails to take reasonable action to summon medical care." 745 ILCS 10/4-105.

No. 19-2629                                                                 15

We have noted before that "the standard for assessing whether conduct is willful and wanton is 'remarkably similar' to the deliberate indifference standard." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (quoting *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 n.13 (7th Cir. 1998)). Because summary judgment was proper on Jones's deliberate indifference claim, it was also proper on her wrongful death claim. Jones concedes this point, arguing only the Court should "overturn the District Court's summary judgment on her Wrongful Death claim because it relies on an erroneous analysis of Plaintiff's § 1983 claim's deliberate indifference standard." Having determined that the district court properly granted summary judgment on Jones's deliberate indifference claim, we therefore also conclude that summary judgment is warranted on Jones's wrongful death claim.

AFFIRMED.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## FINAL JUDGMENT

June 21, 2021

Before

**DIANE S. SYKES**, *Chief Judge*
**MICHAEL B. BRENNAN**, *Circuit Judge*
**AMY J. ST. EVE**, *Circuit Judge*

| No. 19-2629 | JACQUELINE JONES, Independent Administrator of the Estate of Toya D. Frazier, Deceased, <br>   Plaintiff - Appellant <br><br> v. <br><br> ARNOLD MATHEWS, et al., <br>   Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 2:16-cv-02364-EIL <br> Central District of Illinois <br> Magistrate Judge Eric I. Long ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**   (form ID: **132**)